THOMAS WRIGHT, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] A new trial will not be granted, on the ground of newly discovered evidence, where there has been a manifest want of diligence to procure it before trial. This rule ought to be enforced sternly, if the newly discovered evidence is intended to prove an *alibi*, the presumption being, that the fact itself, and the witnesses capable of proving it, must have been known to the accused, or easily ascertainable. Ignorance of the time laid in the indictment, is itself evidence of culpable negligence.

[2.] A new trial will not be granted on the ground of newly discovered evidence, if its only object is to impeach the character or credit of a witness.

[3.] New trial refused on the ground that the verdict was contrary to evidence, there being abundant evidence to sustain it, if the witnesses were entitled to credit. The credibility of witnesses is peculiarly within the province of a jury, and their conclusion will be disturbed only in flagrant cases of injustice.

Indictment in Chatham Superior Court, for larceny from the house. Motion for new trial. Decided by Judge FLEMING. January Term, 1864.

Wright, the plaintiff in error, was indicted for the offence of larceny from the house. The property alleged to have

been stolen was a trunk containing money and other valuables. The offence was charged in the indictment to have been committed on the 17th day of March 1863. The trial took place in the May following.

By the evidence of the owner and his wife, it plainly appeared that the trunk was stolen from the house while they were gone to market, on the day laid in the indictment. It was on a Tuesday, between four and seven o'clock in the morning. The points of venue, value and ownership were also established by these witnesses. The house was in the city of Savannah. A third witness swore positively that about five o'clock on a Tuesday morning, in March 1863, it being day-break, though not very light, she saw Wright enter the house by the back door, and then come out with a trunk and carry it off.

Upon these facts, themselves, there was no counter-evidence; and the case, as finally submitted to the jury, presented only one debatable point, and that was, the credibility of this last witness. The matters tending to impeach her credit, were these: 1st, Some apparent improbability in one or two collatteral facts to which she testified; as, that three days before the trunk was stolen, Wright, being in a saloon, called her out, saying that he had something to tell her, and then told her that he was going to take a trunk out of this same house, (naming the owner,) and for her not to say anything about it, at the peril of her life, if she did, that he would murder her. 2d, She, herself, had been arrested upon suspicion of being the guilty party, and *after* her arrest, had informed upon Wright. 3d, She had recently before the theft, lived, or boarded in the same house from which the trunk was stolen, and knew where it was kept, and she had said to Wright, in answer to questions put by him on the subject, that she did not know, but supposed the owner had much money, and kept it in a trunk or in bank. This was a part of her own testimony. 4th, She owned on the stand, to having said out of Court, that she knew nothing about the case, and that the owner of the trunk was to

give her $25.00 to go home upon, after the trial was over. She owned, also, to having written a letter to Wright's sister, saying, that for $40.00 to go away upon, she would leave, and not be present to testify. 5th, She denied on the stand, certain declarations which, in opposition to her denial, were sworn to by the defendant's witnesses as having been made by her; as, that the owner of the trunk was to give her $25.00 to swear against Wright; that she intended to swear for whichever party would give her the most money; and that she could not say it was Wright who took the trunk, because she did not know it, etc. 6th, There were other contradictions; as, that Wright's sister offered her $50.00 and house furniture to swear for him—she affirming it, and Wright's sister denying it.

The jury rendered a verdict of guilty; and the defendant moved for a new trial, on the ground of newly discovered evidence, and because the verdict was without evidence to support it, and because it was contrary to the evidence, and contrary to law.

This motion was adjudicated by Judge Fleming, at January Term 1864, and a new trial was refused.

As regards the newly discovered evidence, the case rested on the following affidavits: The captain of a military company to which Wright belonged, swore, that from the 15th to the 24th of March 1863, Wright was in camp at Fort Bartow, and was reported for duty by the orderly sergeant, and that deponent did not communicate his knowledge of these facts, either to Wright or his counsel, until after the verdict. Two other persons swore that on the night of the 16th of March 1863, Wright slept in the same camp or tent with them at Fort Bartow, about four miles from Savannah, and there remained until the next morning. One of them added that he staid in camp all the next day, until the deponent went to Savannah, and that during that time he was quite sick, and suffering from a severe tooth-ache. One of them stated that he did not communicate these facts, and the other, that he did not communicate his knwledge of

them to Wright or his counsel before the rendition of the verdict.

Wright, himself, swore that when placed on trial he did not know that the 17th of March 1863 was the day alleged in the indictment, nor that the witnesses would swear to that time; that he had never been served with a copy of the indictment, nor had he seen the warrant; that he was confined in jail until brought out for trial, and had never had an examination; that from the testimony given on an investigation of the larceny before the Mayor of Savannah, when Ella Scott was arrested as the guilty party, he was led to believe that the time alleged and proved would have been different; that after the rendition of the verdict against him, he discovered that the evidence set forth in the accompanying affidavits could be obtained and established; that he used all diligence consistent with his position in jail, to obtain evidence; and that he believed he could obtain evidence in time for another trial, to show his innocence.

There was still another affidavit, but sworn to fifteen days later than Wright's. It was made by a policeman, who swore that Ella Scott, (the witness whose evidence fixed the larceny upon Wright,) told him, on the 25th of March 1863, while in his custody, charged with the crime, herself, that the money was stolen by some of Jake Reed's men and some Louisianians, whose names she did not know, but that she knew them by sight. The deponent communicated this conversation to Wright after the verdict was rendered.

It should be observed, that no effort was made at the trial to establish an *alibi*, and that no evidence on that point was introduced.

The case was submitted for the plaintiff in error upon the brief of counsel.

HEIDT, Solicitor General, for the State.

*By the Court.*—JENKINS, J. delivering the opinion.

The error assigned in this case is, the refusal to grant the appellant a new trial; and this error is referred to two grounds upon which the application was made.

[1.] It is insisted · that a new trial should have been granted on account of newly discovered evidence which, if adduced, would establish an *alibi.*

In the case of *Monroe vs. The State,* 5 *Ga.* 85, it is stated as a settled rule of practice in this Court, that great caution will be exercised in granting new trials on the ground of newly discovered evidence. In *Carlisle vs. Tidwell,* 16 *Ga.* 33, it was held, that "it is the *discovery* of *unknown* evidence, and not the *ascertainment* of the materiality of *known* evidence, which can serve as a cause for a new trial." It has been repeatedly adjudicated, that it must appear, from the showing of the applicant, that due diligence has been used anterior to the trial. *Roberts vs. The State,* 3d *Ga.* 322. *Beard et al vs. Simmons,* 9 *Ga.* 4. *Berry vs. The State,* 10 *Ga.* 511.

From all these rulings, this proposition may be deduced, that on applications for new trial on account of newly discovered evidence, it must be made to appear, that either the fact itself, proposed to be proven, or the evidence by which it may be proven, was unknown to the accused at the time of the trial, and that due diligence was used in preparing the defence. It is scarcely necessary to add, that the rule is intended to be applied to evidence affecting the general issue. With this idea in the mind, it is clearly apparent that there is an intrinsic difficulty in the attempt to base upon the proof of an *alibi,* as newly discovered evidence, a motion for a new trial. I do not say that merit in such an application is an impossibility; but there is that in its nature, which should awaken the scrutiny of Courts, and which calls for rigid application of rules intended to guard the administration of justice against cunning evasion. An *alibi,* as a defence against the accusation of crime, consists in the fact, that at

the time when the crime was committed, the accused was at a place different from that where it was committed, so different as to preclude the idea that he was the perpetrator. As a general rule, a man is presumed to know where he was on a particular day or night, the presumption being weaker or stronger, as the time is more or less remote. Other circumstances, too, may increase or impair its strength: as, whether the accused, at the time designated, abode at the place in question or elsewhere; whether he were then mainly stationary or itinerant. But, with these qualifications, it may be remarked : *first*, that an intelligent man, upon the presentation of the charge, would instantaneously resort to a comparison of the venue of the crime, and his actual locality at the time designated; *secondly*, that the ideas of time and place are among those most familiar to, and best remembered by the common mind, whose occupations are chiefly with daily occurrences. Now, suppose a man of this moderate intelligence, suddenly informed that he was charged with theft. If conscious of his innocence, he would, in his simplicity, naturally and instantly inquire, " Charged with theft ! from whom, when, and where ? " On being informed, that it was said to be from A. B—, on the 17th day of the last month, in Savannah, if resident elsewhere than in Savannah at the time specified, would he not at once tax his memory with the inquiry, whether or not he were at that time casually in the City ? If in fact not then there, is it not almost certain that the fact would be in his knowledge, and the proof of it most probably in his power ? These remarks lead to the conclusion, that where the fact of *alibi* exists, it furnishes no technical, abstract, or doubtful defence; is not devised, and wrought out by skillful practice ; it is the suggestion of common sense; within the range of the meanest capacity, short of idocy ; and furnishes a triumphant vindication of innocence. The inference is, that it would require an extraordinary showing on an application for a new trial, to excuse or account for the omission to set up such a defence on the first trial.

Let us now consider the case of the appellant.

The larceny, with which he was charged, was alleged and proven to have occurred in the city of Savannah, on the 17th day of March 1863. Precisely at what time the defendant was arrested, does not appear, but he was tried and convicted on the 26th day of May 1863, two months and ten days after the commission of the act. He states in his affidavit that he had been confined in jail a portion of that interval, under this charge, and therefore the interval between the time of the larceny and the presentation of the charge against him, was still shorter. According to the case made for a new trial, he was, on the said 17th March 1863, a member of a military company in service, and encamped at fort Bartow, four miles from the city of Savannah. This fact was of course known to him at the time of his arrest and of his trial. The very nature of the service made him stationary at camp Bartow, except upon occasional absences on leave. All this was strongly suggestive of an *alibi*. His situation in camp was not solitary; his associates were not few; they were at least numerous enough to constitute a military company. His situation was that of a man whose daily presence in camp is, by military usage, tested by one or more roll calls; and one of his affidavits discloses the fact, that on that particular morning, (17th March 1863,) there was a roll call at camp Bartow. Hence, we infer that if the fact of *alibi* existed, as now set up, unusual facilities for the proof of it were at his command. Yet we have no evidence that any movement, whatever, towards this most available defence was made, anterior to, or during the trial; nor that a continuance was asked, to give time and opportunity for the procurement of evidence of a fact, certainly known to him, if it existed.

In the January following, (seven or eight months later,) under the pressure of a conviction, he is enabled to produce two men who swear that he slept in the same tent with them, at camp Bartow on the night of the 16th March, 1863, suffering from tooth-ache, and was certainly in camp until after roll call. True, they say they did not communicate their

knowledge of these facts until after his trial and conviction. But why communicate facts already as well known to the party interested in proving them, and by him also known to be within *their* knowledge, susceptible of proof by them? These affidavits of Miller, Hover, and Manin, fix upon the appellant most flagrant want of diligence. How is it excused? *First*, The circumstances of an investigation of a similar charge against a third person, impressed his mind with a belief that a different date was alleged as the time of the theft, but what those circumstances were, is not stated, nor if they were, could they excuse him. His concern was with the charge against him. *Secondly*, He had not been served with a copy of the indictment, and was not informed of the time when the crime charged against him was alleged to have been committed. But he was entitled to a copy of the indictment before arraignment, and could have learned from it the time specified, or he could have learned it before trial from the original. His failure, therefore, to assert his rights cannot be pleaded in excuse of negligence in the preparation of his defence. It is further urged, that he could not know, what would be proven as the date of the commission of the crime, the State not being confined to the time specified in the bill. It is true that some latitude is allowed in proving the time, and very properly so, but, practically, such variances are not usual—are exceptional; the proof as to time, generally corresponding to that alleged. Where, as in this case, that correspondence exists, it can avail nothing to say he could have proven an *alibi*, but did not prepare himself with the proof, because, by possibility, a time different from that alleged might have been established by the evidence for the prosecution. His difficulty is, that now affirming his ability, (if a new trial be granted,) to prove an *alibi* on the day laid in the indictment, he used no diligence to obtain the proof before the trial. A new trial could not, under the circumstances, be granted, on this ground, without setting aside reiterated rulings of the Court.

[2.] As to the affidavit of Dennis, that the witness Scott

had, in a conversation with him, previously to her examination on the trial, charged the larceny upon other parties, we remark, first, that the charge was very vague, the persons then charged by her not having been named, but only described as being some of Jake Reed's men, and some Louisiannians; secondly, that this Court has held as "a well settled rule, that a new trial will not be granted, on the newly discovered evidence, if its only object be to impeach the character or credit of a witness."—*Levining vs. The State*, 13 *Ga.*, 513.

[3.] Little need be said in regard to the remaining ground, viz: that the verdict is contrary to the evidence. This Court has repeatedly decided that it is only in flagrant cases that a new trial will be granted for this cause alone.

If the witnesses were entitled to credit, in this case, there was abundant evidence to sustain the verdict. The credibility of witnesses is a matter especially confided to the discretion of the jury. The Court will seldom interfere with their exercise of it.

The judgment below is affirmed.