THE STATE OF KANSAS v. GEORGE ROHRER.

1. INFORMATION; *Sufficient Description of Place.* Where the place where intoxicating liquors are unlawfully sold is described in an information charging an offense under the prohibitory liquor law, as follows: "In the south portion of a certain connected row of frame buildings fronting east on Spruce street, between North Second street and North Third street, in the city of Abilene, in said Dickinson county and state of Kansas," and no motion is made to quash the information, and the alleged indefiniteness of the description is raised only by objection to the introduction of evidence, and thereupon the court construes the description in the information to refer "to the south building of the connected row of frame buildings fronting east on Spruce street, between North Second street and North Third street, in the city of Abilene," and limits the evidence to the extreme south building of the connected row of frame buildings, *held,* that the description in the information, as construed and limited, is sufficient.

2. ———— As a general rule, newly-discóvered evidence merely cumulative is no ground for a new trial. (*Clark v. Norman,* 24 Kas. 515.)

3. ———— *Evidence; New Trial.* Newly-discovered evidence of hostility to the defendant in a criminal action, on the part of a witness whose testimony was used against the defendant at the trial, is not a cause for a new trial.

*Appeal from Dickinson District Court.*

ON May 17, 1883, the county attorney of Dickinson county filed in the district court of that county an information, verified upon information and belief, against *George Rohrer,* charging that—

"The defendant on the — day of May, 1883, in the south portion of a certain connected row of frame buildings fronting east on Spruce street, between North Second street and North Third street, in the city of Abilene, in said county of Dickinson and state of Kansas, then and there being, did then and there unlawfully sell, barter and give away spiritous, malt, vinous, fermented and other intoxicating liquors, without taking out and having any permit to sell intoxicating liquors, and contrary to the statutes of the state of Kansas in such case made and provided."

On May 17, 1883, a warrant was issued upon the information, and upon the same day the defendant was arrested.   He

at once entered into a recognizance in the sum of $500 for his appearance to the district court, to answer the charge set forth in the information filed against him. Trial commenced May 24, 1883, before the court with a jury. Albert Wheeler was produced as the first witness on behalf of *The State,* and, after he had been sworn, testified "that he knew the defendant, George Rohrer, and that he had known him for about four years; that he knew where Spruce street, in Abilene, Dickinson county, was." Thereupon the following proceedings, among others, were had in court:

"The attorney for defendant, Capt. McClure: I suppose we may as well make our objection now. We object to the introduction of any evidence under this information against the defendant. The ground of objection is, that the information does not charge any specific and certain offense against the defendant. We have another objection, but we will make them separately, if necessary.

"The Court: You claim that this charge is so indefinite that the defendant cannot be convicted upon it?

"Capt. McClure: Yes, sir.

"The Court: The objection will be overruled.

"Capt. McClure: We will save an exception. The other objection we desire to make, we think is fatal to this information. We also object to the introduction of any evidence under this information against the defendant, for the reason that no place is designated in the information where the sale was made — where the alleged sale was made.

"The Court: I am inclined to think that the objection is not good, coming at this time, after we have entered upon the testimony; that it is sufficient to state the place is the south building. That is the construction the court will put upon the information — that it is the extreme south building, because otherwise the description is indefinite. It seems to me these questions ought to be raised upon motions to quash.

"Capt. McClure: The court requires the state to show that it is the extreme south building of that row?

"The Court: I think that is the construction that the court must put upon that. I don't know anything about the building, but I take it from this that there are three, four, five or six buildings connected together; and this is intended to designate the building that is farthest south — that portion or division that is farthest south.

" Mr. Mahan: Then the court overrules our objection?

" The Court: Yes, sir.

" Mr. Mahan: We save an exception."

On May 26, 1883, the jury returned a verdict of guilty against the defendant, and on the same day the defendant filed his motion for a new trial, alleging, among other things, that the verdict was contrary to law; that the verdict was not supported by the evidence; and also newly-discovered evidence. Several affidavits were filed setting forth the newly-discovered evidence. This motion was overruled, as was also a motion in arrest of judgment. The defendant was sentenced to pay a fine of $200, together with the costs, taxed at $75.30, and to be committed to the jail of Dickinson county until the fine and costs were paid. The defendant appeals.

*J. R. Burton,* for appellant.

*S. B. Bradford,* attorney general, for The State; *Edwin A. Austin,* of counsel.

The opinion of the court was delivered by

HORTON, C. J.: The appellant—defendant below—asks that this case should be reversed for the following reasons: *First,* because the charge in the information is not definite and certain; *second,* because the information was verified by the prosecuting attorney upon information and belief; *third,* because the evidence does not support the verdict; and, *fourth,* because of error in the court in overruling the motion for a new trial.

The statute prescribes that in all prosecutions under the prohibitory liquor law, by indictment or otherwise, it shall not be necessary to state the kind of liquor manufactured or sold, but it *shall* be necessary to describe the place where sold. It is therefore claimed by the defendant that the information does not state, with any degree of certainty, the place where he unlawfully sold intoxicating liquors. The defendant pleaded not guilty to the information, and made no motion to quash the same. The alleged indefiniteness of the information was

raised only by objection to the introduction of evidence. The court construed the description in the information to refer to the south building of a connected row of frame buildings fronting east on Spruce street, between North Second street and North Third street, in the city of Abilene, and the evidence was limited to the extreme south building of this connected row of frame buildings. The description alleged in the information, as construed and limited by the court upon the trial, was sufficient, and the defendant could not have been misled or prejudiced in any matter. Sec. 293 of the Crim. Code provides: "On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." (*The State v. Sterns*, 28 Kas. 154.)

1. Information; sufficient description of place.

Upon the authority of the cases of *The State v. Blackman*, 32 Kas. 615, and *The State v. Bjorkland*, ante, p. 377, the exception to the information because it was verified upon information and belief only, is not well taken.

There was abundant evidence before the jury tending to show that from January 1, 1883, to the time of the filing of the information against the defendant, he kept at the place described in the information a saloon, or club-room, where intoxicating drinks could be obtained; that the room had stained windows, and a bar with bottles, tumblers, etc. Evidently for the purpose of evading the prohibitory law, the saloon or club-room was used as the headquarters of an association ostensibly called the "Workingmen's Union;" the defendant was the manager of the "Union," and one George A. Wheeler was the bartender in the saloon or club-room, but he was under the control of defendant. Members of the so-called "Union" paid two dollars for stock in the association, and got checks therefor; the checks were called stock, and whisky and beer were purchased from the defendant and the bartender with these checks. Persons who held these checks were called stockholders in the "Union;" three beer checks were sold for twenty-five cents, and a member of the "Union"

could buy checks in this quantity. The defendant had no permit to sell or manufacture intoxicating liquors.

Joshua Taylor, called by the prosecution, testified on direct examination as follows:

"Q. Do you know George Rohrer? A. Yes, sir.

"Q. Do you know where Spruce street, in Abilene, Dickinson county, Kansas, is situated? A. Yes, sir.

"Q. Do you know where North Second street is, and North Third street? A. I ain't much acquainted with the run. of the streets.

"Q. Do you know where Tom Linson's livery stable is? A. Yes, sir.

"Q. Do you know the building on the west side of Spruce street, directly west of the livery stable? A. Yes, sir.

"Q. Do you know a row of connected frame buildings fronting east on Spruce street, west of that livery stable? A. Yes, sir.

"Q. State whether or not at any time between the 1st day of January and the 17th day of May of this year, you were in the south room of that row of connected frame buildings. A. Yes, sir; I was there.

"Q. Did you see the defendant there? A. Yes, sir.

"Q. What was in the room? A. There was a bar in there, and a stove.

"Q. In what part of the room was the bar? A. On the south side.

"Q. Did you see the defendant at the bar at any time? A. Yes, sir; I saw him there.

"Q. What was he doing? A. Well, he was selling checks, or tickets, I believe, or something.

"Q. State whether or not during that time and at the place you received anything to drink from the defendant? A. Yes, sir; I guess I did.

"Q. What? A. I got a glass of whisky from the defendant.

"Q. Glass of whisky? A. Yes, sir.

"Q. Whom did you pay for that, if anyone? A. Well, I don't now recollect. It was a young man that was in there. I don't know his name. He took the money and got the change, and handed me back my change.

"Q. Who passed out the whisky? A. Mr. Rohrer.

"Q. The defendant? A. Yes, sir.

"Q. About when was that? A. I think it was the last Saturday in March.

"Q. The last Saturday of what? A. Last Saturday of March.

"Q. Of March? A. Yes, sir.

"Q. Where was the person to whom you handed the money — behind the bar, or in front of it? A. Right at the end of the bar.

"Q. Whom did you ask for the whisky? A. Mr. Rohrer.

"Q. Did Mr. Rohrer say anything about how you should pay for it, or whom you should pay for it? A. When I handed the amount of money to him, he got some checks and gave me the checks.

"Q. Who did he get the checks from? A. He got the checks on the shelf that was lying back of the counter; then he handed the money to Mr. Rohrer, and he handed me back the change. He handed me the change, or the money.

"Q. How much money did you hand him? A. I gave him a half-dollar, and he gave me the change. He took out fifteen cents, and gave me thirty-five cents as change, and he handed the check to Mr. Rohrer.

"Q. Was that before you had asked Mr. Rohrer for the whisky? A. Yes, sir; it was before I drank the whisky.

"Q. In what county was that? A. Dickinson.

"Q. State? A. Kansas.

"Q. How long have you known the defendant? A. I guess about three or four years, I think; I don't remember exactly."

Upon cross-examination, Taylor testified that Col. Swigart drank with him at the time mentioned in his direct examination; that on the day named he had a difficulty with the defendant, and that in the afternoon of that day the defendant said he would not give him any more to drink.

The only evidence introduced upon the defense was the testimony of the defendant. He denied the statements of Mr. Taylor, and said very positively that the latter did not get any whisky, or other intoxicating liquor, from him, or from anybody else, with his authority, or consent, or knowledge, in March, 1883, or at any other time between January 1, 1883, and May 17, 1883. The state elected to rely upon the

sale of whisky made to Joshua Taylor on the last Saturday of March, 1883. With the evidence before the jury, we cannot interfere to set the judgment aside upon the ground that the evidence does not support the verdict.

"Testimony on paper is not like testimony from the lips; and when twelve jurymen who hear the living voice, and see the man who utters it, believe one witness and disbelieve others; and the judge, who has the same opportunities of judgment, declares that he thinks that they ought to have so believed and disbelieved, it seems very like trifling with the sacredness of jury trials for us, who know nothing but the written story of what was said and done, and that story too often imperfect and incomplete, to decide that all this is wrong, and that jury and judge ought to have believed and found the other way." (*K. P. Rly. Co. v. Kunkel,* 17 Kas. 169, 170.)

Upon the motion for a new trial, as showing newly-discovered evidence, the defendant presented, besides his own affidavit, the affidavits of Leonard Swigart, Simon Rothschild, William D. Robb, and William Hickman. The alleged newly-discovered evidence showed that Swigart did not drink any liquor with Taylor at the place of business of the defendant, in March, 1883, when the defendant was present, and therefore tended to support the evidence given by the defendant. The other newly-discovered evidence tended to contradict the witness Taylor, and also tended to show that he had ill-will against the defendant, and had threatened to have him "pulled for selling whisky, because he had put him out of his house." All of this evidence, except that showing the hostility of the witness Taylor to the defendant, was merely cumulative; and newly-discovered evidence which is merely cumulative is no ground for a new trial trial. (*Clark v. Norman,* 24 Kas. 515, and cases cited therein; Hilliard on New Trials, 2d ed., § 13, p. 499.) So, also, newly-discovered evidence of hostility to a defendant in a criminal action on the part of a witness whose testi-

2. Cumulative evidence; new trial.

28 — 34 KAS.

**3. Evidence, not cause for new trial.** mony was used against the defendant at his trial, is not a cause for a new trial; nor is newly-discovered evidence which goes only to impeach the credit of a witness sufficient ground for a new trial. (*Wright v. State*, 34 Ga. 110; *State v. Carr*, 1 Foster, 166; Hilliard on New Trials, 2d ed., § 19, p. 505; id. § 25, p. 509.)

Upon the record presented to us, the judgment of the district court will be affirmed.

All the Justices concurring.