Lovejoy *vs.* The State of Georgia.

LOVEJOY *vs.* THE STATE OF GEORGIA.

1. There being two counts in the indictment, one charging defendant with being an actual perpetrator of murder, and the other charging him with being present, aiding and abetting another in the commission of the offence, and neither count being abandoned by the State, and there being some testimony tending to show that the defendant may have been present aiding and abetting in the homicide but not as one of the principal actors therein, it was error to so charge the jury as to withdraw from their consideration such testimony, and instruct them, in substance, not to consider it.

(a) This is true although the punishment is the same whether defendant be principal in the first or in the second degree. Any expression or intimation by the judge of opinion as to what has or has not been proved is expressly forbidden, and is declared to render necessary the grant of a new trial.

2. It is error to charge that the defendant's statement can only avail

him when it is in conflict, in material matters, with the sworn testimony.

November 21, 1888.

Criminal law. Charge of court. Defendant's statement. Before Judge RICHARD H. CLARK. Dekalb superior court. February term, 1888.

Lovejoy was indicted as being present, aiding and abetting one Pritchett in the murder of J. E. Hurst, and in another count of the same indictment, with being the actual perpetrator of the crime, together with Pritchett and another.

The testimony introduced by the State tended to show that, early in the day on which the killing occurred, one Hubert was drunk and disorderly at a tabernacle meeting of negroes at Decatur; that he was arrested by Hurst, who was the town marshal, assisted by others; that as he was being conveyed away by the parties who had arrested him, he was violently taken away from them by a large crowd of negroes, it not being shown that Lovejoy was one of this crowd; that a warrant was sworn out charging Hubert with the offence of resisting an officer, or some similar offence; that later in the day, shortly before the killing and near the spot where it occurred, Lovejoy with others approached the marshal and asked, repeating the question several times, if Hubert were taken peaceably away by them, if an attempt would be made to arrest him, and the marshal replied but would not promise not to make the arrest, stating that he would have to take his chances, or words to that effect; that shortly afterwards, Hubert, Pritchett and Lovejoy passed up the railroad going towards Atlanta, Pritchett having hold of Hubert upon one side and Lovejoy upon the other; that they were pursued by Hurst, accompanied by Austin, the

sheriff of the county, Rodgers, Pattillo, and Langford; that the pursuing and pursued party came together and the sheriff attempted to arrest Hubert, who was armed with a small knife, Pritchett having out a pistol and declaring that the arrest should not be made; that Hubert, when the sheriff attempted to lay hands upon him, began to cut at the sheriff, who was trying to knock the knife from Hubert's hand; that Pattillo then struck Hubert with a stick and Rodgers at the same time struck him over the head with a pistol; that Pritchett then fired; and then the firing became general upon both sides; that this firing was participated in by Lovejoy (Hubert having had his pistol taken away from him when he was arrested early in the day) and possibly by other negroes; that Hurst and Hubert were both killed, the fatal shot which killed Hurst being probably fired by Pritchett; that Pritchett and Lovejoy left, one in advance of the other a little, but came together a short distance away from the scene of the homicide; that they were overtaken by the sheriff, who failed to recognize them, but who asked Pritchett what his name was and who was told by Pritchett that his name was Johnson, Lovejoy making no correction of this statement; that Lovejoy and Pritchett went on together to Kirkwood, a small railroad station about two miles from Decatur, and that Lovejoy took the afternoon passenger train and came on to Atlanta, and was arrested at a planing mill near Atlanta, where he had been at work, a day or two after the homicide. There was some conflict between the witnesses for the State as to whether Lovejoy was the negro who was with Pritchett and Hubert at the time of the fatal affray and who took part in the shooting, and also as to some minor matters. Pritchett had not been arrested at the time of the trial.

For the defendant the testimony tended to show that

he had no connection whatever with the rescue of Hubert in the morning; that he had gone to the tabernacle with his mother and her family and conducted himself in an orderly and peaceful manner while there; that he had made an engagement to take a girl to her home in the afternoon; that he missed her in some way and walked up toward Kirkwood; that he passed the scene of the fatal rencounter sometime before it occurred and was some distance away when it did occur; that he was joined by Pritchett, whom he did not know, and they walked on together to Kirkwood, where defendant took the train to Atlanta.

Defendant in his statement denied any acquaintance with Hubert or Pritchett. He said he was up town and not near the tabernacle when the rescue occurred in the morning. Gave circumstantially an account of his movements and whereabouts during the day. Stated that he was informed about the arrest of Hubert, and sometime afterwards approached Mr. Hurst and inquired whether, if Hubert would go peaceably, he would be allowed to go without arrest, and Mr. Hurst replied he would; that having missed the girl with whom he (defendant) had the engagement, he walked up the railroad after her, passing Hubert and those with him before the affray, not stopping, but advising them to go on home and telling them they could go on with him; that he was fifty yards away when the firing occurred; that he was afterward joined or approached by Pritchett about the time the sheriff came up; that the sheriff said he wanted them to go back to Decatur as witnesses about the fuss, but he told the sheriff he knew nothing about it; that the sheriff went on ahead of them until they came to Kirkwood, when the sheriff asked him his name, which he gave; that when Pritchett

was then asked his (Pritchett's) name, he (Pritchett) said it was Johnson, defendant having no acquaintance with Pritchett except by sight, and not knowing whether his name was Pritchett or Johnson.

Langford, and Austin the sheriff, were both introduced as witnesses for the defendant, and their evidence tended strongly to show that defendant was not present and did not participate in the fatal affray.

The defendant was found guilty, and the jury recommended him to the mercy of the court.

He moved for a new trial on the following grounds:

(1–2) Verdict contrary to law and evidence.

(3) The charge of the court was contrary to law in this: that the judge did not, as requested by defendant's attorney, give in charge the question of voluntary manslaughter, as the evidence authorized and required him to do, but withheld in his charge the consideration of voluntary manslaughter.

(4) Error in not giving in charge the whole law of the case, and in thus restricting the jury to the consideration of the offence of murder alone.

(6) Error in the following charge: "To come directly down to this case, according to the evidence, there is one proposition that meets you right at the beginning; that without regard to what may have happened at the time, or what sort of crime it may have been, if any crime at all, that this defendant was present. If you believe that he was present and one of the actors therein and believe that beyond a reasonable doubt, then that portion of the case would be made out, and then you should proceed to the investigation, and see whether he is guilty of the crime with which he is charged. If that is not made out, that is, if you do not believe from the evidence and believe beyond a reasonable doubt that he was there, but believe that he was

not there, or have a reasonable doubt as to his presence there, why then you ought to find him not guilty. Well now, upon that, gentlemen, let me call your attention to the evidence in the case; let me call your strict attention to the evidence in the case. First, begin at the beginning and see the species of evidence, or the evidence, if there is any of that sort before you, which connects him with this transaction; then follow that down to the time when it was alleged that the crime was committed, and there stop. After that, then take the testimony up as to what occurred, with which he is connected, if so connected, according the evidence, immediately after the alleged crime was committed. Having done that, then go back to the evidence that there may be of his presence at the commission of the offence and of his action therein, and from all of that evidence—the first, the second and the third, come to your conclusion as to whether he was present or not." This charge is claimed to be erroneous, because it assumes that, according to the evidence, defendant was present when the crime was committed, thus giving an opinion upon the evidence; it assumed to guide the jury as to how they should pursue their line of reasoning; it is vague, uncertain and confused, and its natural tendency was to hopelessly bewilder the jury, to the damage and detriment of defendant.

The other two grounds are set out in the decision. The motion was overruled, and defendant excepted.

GARTRELL & LADSON, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, JOHN S. CANDLER, solicitor-general, and J. B. STEWARD, for the State.

SIMMONS, Justice.

1. Lovejoy was convicted of murder, in Dekalb su-

perior court.   He made a motion for a new trial, which was refused, and he excepted.   Among the grounds of the motion is the following :

Because the court erred in giving the following charge to the jury: "There are two counts in this bill of indictment.   One charges defendant with being present aiding and abetting others to commit the offence ; and there is another which charges him, with those others, with being the principal actors in this case.   According to the evidence, the law arising upon it makes out a case where all of those men are principal actors, or not at all; and therefore, if you find this defendant guilty, you would say, upon the principles of law I have given you in charge, 'We, the jury, find the defendant guilty of murder,' and as one of the principal actors in this transaction.   According to the law as applied to this evidence, there is no separation here ; it is not a case of being present aiding and abetting, but is a case where, according to the evidence, it is made out either that they were all guilty of being principal actors, or were not guilty at all, or that this defendant was not guilty at all."   One of the errors assigned upon this charge is, that it was an expression or intimation of opinion of the court upon the evidence.   We think the exception is well-taken.   We have carefully read the evidence taken on the trial of this case, and while most of the evidence for the State tends to show that Lovejoy was one of the principal actors, and most of the evidence for the defendant tends to show that he was not present at the difficulty, there is some evidence which would seem to indicate that he might have been present aiding and abetting in the homicide, but not as one of the principal actors therein.

It is argued, however, that this charge did not injure the accused, because the punishment is the same

whether he is a principal in the first degree or in the second degree. It is true that the punishment is the same, but we think that the accused had a right, under the law, to be tried for the offence of which he was really guilty, if guilty at all. The State charged him in two counts in the indictment, and did not abandon either on the trial. There being some evidence indicating his presence, aiding and abetting, we do not think the trial judge should have taken the consideration of it from the jury and instructed them, in substance, not to consider it. Our law is so jealous of the right of the jury to come to their own conclusion about the evidence and the weight of evidence, that it positively forbids any judge, on the trial of civil or criminal cases, "to express or intimate his opinion as to what has or has not been proved," (code, §3248,) and declares that "should any judge . . violate the provisions of this section, such violation shall be held by the Supreme Court to be error; and the decision in such case reversed, and a new trial granted." This being an expression of opinion by the trial judge upon the evidence, we have no discretion in the case, but must reverse the judgment of the court below.

2. Another ground taken in the motion for a new trial is, in substance, as follows : After charging the jury as to the right of the accused to make a statement, and that they might give it such force as they saw proper, and believe it in preference to the sworn testimony if they saw proper, the judge added the following: " I further charge you that what the law means by believing the defendant's statement in preference to the sworn testimony is, where the sworn testimony and the statement conflict. If you give this statement force and consider it, then in considering it, it would be your duty to give it just such force as you see fit. His statement,

to avail him, must be in those parts that are in conflict with the evidence, and in conflict in material matters."

We are inclined to think that this part of the charge is erroneous. Under this charge, the prisoner's statement, to avail him, must be in conflict with the sworn testimony, and only when in conflict could he get any benefit from his statement. We think, however, that on the contrary, the prisoner's statement may avail him not only where the same is in conflict with the sworn testimony, but where no such conflict exists. This case is a good illustration of the unsoundness of the charge. A majority of the State's witnesses swore positively that the defendant was present at the difficulty and fired a pistol at the officers and their *posse;* while, on the other hand, the defendant's witnesses, including the sheriff, who was the arresting officer, swore positively that the prisoner was not present and did not fire a pistol. The prisoner in his statement corroborated the testimony of the sheriff and his other witnesses; yet under the charge of the court, the jury were not allowed to give him the benefit of his statement, even to corroborate the testimony of his witnesses, when that testimony conflicted with the testimony of the State's witnesses.

We think, also, that the defendant's statement is frequently helpful to the jury in explaining the testimony of witnesses, although it may not conflict therewith. In this case most of the witnesses testified that this defendant was seen with Pritchett, the principal actor, upon the railroad after the difficulty; and as to this fact there was no conflict; yet the defendant's statement explains how it was that he happened to be with Pritchett after the difficulty; that he was going home, and that Pritchett overtook him on the road and walked with him to the station, and was seen with him by the sheriff and others. Under this charge, this explanation could

not avail or benefit him in the minds of the jury, because it did not conflict with the sworn testimony.

There was no error in the other grounds of the motion.

Judgment reversed.