GOLDSMITH *vs.* THE STATE OF GEORGIA.

1. Under the facts in evidence, it was error to charge the jury that "if a person secretly enter the dwelling of another in such manner as amounts to fraud, and conceals himself there, and afterwards com-mits a larceny and breaks out, and is detected, that fraud, with the accompanying facts, would be a sufficient breaking and entering in the meaning of the law."

2. On the subject of *alibi* the charge was correct in substance.

Criminal law. Burglary. *Alibi.* Before Judge HILLYER. DeKalb Superior Court. September Term, 1878.

Goldsmith was placed on trial for the offense of bur-glary in the night-time. The indictment charged that he "did break and enter the dwelling house of Edward B.

Walker, with intent to commit a larceny, and after break-
ing and entering, was detected and prevented from commit-
ting the larceny." He pleaded not guilty. The only
evidence material to an understanding of the decision was
that of Miss Magill. She testified as follows :

In the month of July she lived at the residence of E. B.
Walker, in DeKalb county. Knew the defendant, Jack
Goldsmith. She was awakened by a noise in her room
and saw the figure of a man standing by the bureau. She
called, but he did not answer ; called again, and he said not
to make that noise. She screamed again, and he came up
to the head of the bed ; said for her not to scream again ;
had a stick in his hand. She again screamed and he ran
and jumped out of the window. She got up, ran to the
window and recognized his voice. When he got out she saw
him plainly in the moonlight, recognized him and said, "I
will make you pay for this night's work, Jack Goldsmith."
When she first saw him he had his hand in the drawer.
The blinds of the windows were closed and latched. The
door was shut but not locked. The door fastened with a
bolt. The house is a one-story house. It was between
half-past 12 and 1 o'clock. Jack Goldsmith had been there
on the place about three months. She had never seen him
before he came there. He was cook on the place. She is
perfectly satisfied that it was Jack Goldsmith who was
there. She lost nothing that night. There was no entrance
to the room except by the door and windows.

On cross-examination :

First knew the defendant when he came to live with Mr.
Walker, which was about three months ago. He was cook
for Mr. Walker ; had left the employment of Mr. Walker
about three weeks before that night. She went to bed at
11 o'clock. After she went to her room heard the clock
strike. Before she went to bed the blinds of the windows
were fastened. The door from her bed-room opened into
the hall. Did not think the door of the hall was locked.
It was closed. When she awoke the blinds were drawn to,

whether closed she could not say, could not say whether or not they were latched. Prisoner spoke in low tone of voice—not in a whisper. Have heard him speak in a low tone of voice, not in a whisper. Did not recognize the figure at the bureau as that of Jack Goldsmith, but did after he had jumped out of the window. Her sister first arrived at the room after she screamed.

Nothing was taken from the room. Suppose her screaming prevented him from doing so. After the occurrence the whole house was found fastened except the window, that was opened by the man. Said upon the preliminary examination that they were all closed except the window, that the man got through. In getting out of the window he flung it open, went quickly, and sprang out. It was then she recognized him. It was a bright, moonlight night.

Recognized him by his clothes being the same he had worn when at the house; had on same kind of hat. His figure was one you could hardly mistake. Recognized his voice. Her pocket-book and jewelry were in the bureau-drawer.

After the occurrence, it was not ten minutes after one o'clock. She closed the blinds when she went to bed. In jumping from the window one would go to the ground. At the time she recognized the prisoner she was excited and alarmed, but not so much as to lose her senses.

Much testimony was introduced by the defendant to establish an *alibi*.

The jury found him guilty, and he moved for a new trial upon the following grounds:

1. Because the court erred in charging the jury as follows: " The court instructs you that if a person secretly enter the dwelling of another in such a manner as amounts to fraud, and conceals himself there, and afterwards commits a larceny, and breaks out, and is detected, that fraud, with the accompanying facts, would be a sufficient breaking and entering, in the meaning of the law."

2. Because the court erred in charging as follows: " You

will look at all the proof, and if the evidence satisfies you that the offense is made out, and that the prisoner was physically present at a locality so far distant from the scene of the crime that he could not have been present at its commission, then the defense of an *alibi* will be made out, and you should acquit him. But if the proof does not satisfy you that he was at a different locality, so as to render it physically impossible for him to have been there, the *alibi* would not be made out. You will look to the offense, to the place of its commission, and where the prisoner was, and see whether, under the proof, he could have been present there at the time of the commission of the crime."

The motion was overruled and the defendant excepted.

CANDLER & THOMPSON, for plaintiff in error, cited, on first division of charge being on assumed facts, 58 *Ga.*, 536; 44 *Ib.*, 28; 33 *Ib.*, 155; 47 *Ib.*, 24. On necessity of "breaking into" to constitute burglary, Code, §§4415, 4386; 51 *Ga.*, 285. On charge as to *alibi*, 30 *Ga.*, 241; 59 *Ib.*, 142; 52 *Ib.*, 180.

B. H. HILL, Jr., solicitor general, for the state, cited 2 Whar. Crim. Law, 1539; 59 *Ga.*, 142.

BLECKLEY, Justice.

1. We need not decide whether the doctrine of "breaking out" is applicable to our statute, and to this indictment under it. The proposition of the court in charging the jury on the subject, may or may not be sound law in the abstract, but in a material part it is obviously inapplicable to the facts of the present case. There is no evidence showing, or tending to show, that the burglar entered the house by fraud, and concealed himself, or that he committed a larceny. The indictment itself negatives the commission of any larceny, and so, too, does the testimony. As to fraud, when we ask what fraud, when was it committed,

how committed, and on whom? there is nothing to return or suggest any answer. As to concealment, there is the same blank when we ask, Where was he concealed, how, and for what length of time? Indeed, let any question whatever be asked concerning fraud or concealment, and there is no response, and can be none, for there is no evidence about either fraud or concealment. It may be thought that this irrelevant charge is not cause for a new trial, and perhaps it would not be if the court had not mentioned the commission of a larceny in the very teeth of the indictment as well as of the evidence. Such an inadvertence indicates that the case was not tried with that deliberation which ought to be observed in the trial of so grave a felony. The tendency is prejudicial to the prisoner when the court refers to a crime as an accomplished fact, while the whole of the evidence goes merely to an attempt. It has the appearance of magnifying from the bench the enormity of the transaction.

2. On the subject of *alibi* the court charged correctly in substance. 59 *Ga.*, 142. There was no suggestion that either the evidence or conviction of impossibility of the prisoner's presence, had to be more strong or full than would be sufficient to set up any other fact in the case. To believe that presence by the prisoner was impossible, is not the same as for it to be impossible not to believe he was absent. In other words, because the attribute of impossibility must qualify the outward or objective fact, it does not follow that it must also qualify the inward or subjective state; and the charge does not intimate that the word impossible, or the idea for which it stands, applies to the latter at all.

Judgment reversed.