JACKSON vs. THE STATE OF GEORGIA.

[WARNER, Chief Justice, being engaged in presiding over the senate organized as a court of impeachment, did not sit in this case.]

1. An indictment is not demurrable for any matter *dehors* the pleadings and the record.

2. After the state has rebutted the prisoner's evidence and closed, it is too late for the prisoner, as matter of right, to introduce and examine a fresh witness on his general case, unless some good excuse is rendered for holding the witness back; and if no excuse be offered, the court may decline to hear the witness, except in sur-rebuttal of the state's rebutting evidence.

3. The charge of the court in respect to *alibi* was in conformity to 59 *Ga.*, 142; and in respect to the evidence of an accomplice, it was in conformity to Roscoe's Cr. Ev., 456, *et seq.*, and to 52 *Ga.*, 106, 398. As to threats, see 49 *Ga.*, 12, and 58 *Ib.*, 224; and as to *falsus in uno falsus in omnibus.* see 59 *Ga.*, 63; 53 *Ib.*, 365, and cases therein cited. On the impeachment of witnesses and their support by evidence of general character, the charge of the court was correct and sufficiently full.

4. It was not error against the prisoner to instruct the jury in terms of the act of December, 1878, on the relative powers of the court and jury over the punishment.

5. The jury had a right to convict the prisoner on the evidence in the record, the accomplice being corroborated indirectly on the main point by several circumstances of more or less weight; and the court did not err in overruling the motion for a new trial.

Criminal law. Demurrer. Evidence. Witness. Practice in the Superior Court. *Alibi.* Accomplice. Threats. Charge of Court. New trial. Before Judge CRISP. Lee Superior Court. March Term, 1879.

Jackson, Jones and Daniel were jointly indicted for the murder of Whitsett, alleged to have been committed on the 13th of October, 1878. The defendants severed and Jackson was first placed on trial. The evidence against him consisted mainly of the testimony of Daniel, an accomplice. Whitsett was undoubtedly assassinated by being shot through the window of his room with a load of buck-shot. Daniel swore positively that Jackson did the shooting; if

his testimony thus far be taken as true, he was undoubtedly an accomplice. He was corroborated by circumstances of more or less weight, which made a case proper for the determination of a jury. A verdict of guilty was returned, and Jackson moved for a new trial upon the following, among other grounds:

1. Because the court erred in sustaining the demurrer to the motion to quash the indictment upon the ground that the defendant was charged with the murder of Whitsett on October 13th, 1878, when said Whitsett was in life on that day and for many days thereafter.

2. Because the court erred in charging the jury as follows: "*Alibi*, as a defense, involves the impossibility of the prisoner's presence at the scene of the offense at the time of its commission, and to be successful the range of the evidence in respect to time and place ought to be such as to lay the foundation for reasonably inferring that the prisoner could not possibly have been present at the time and place of killing."

3. Because the court erred in charging as follows: "The corroboration ought to be sufficient to satisfy the jury of the truth of the evidence of the accomplice. If the jury are satisfied that he speaks the truth in some material part of his testimony, in which they see him confirmed by unimpeachable evidence, this may be a ground for their believing that he also speaks the truth in other parts as to which there may be no confirmation; but the corroboration ought to be as to some fact or facts connecting the prisoner with the offense, the truth or falsehood of which would go to prove or disprove the offense charged against the prisoner."

4. Because the court erred in charging as follows: "A witness impeached by proof of his general bad character—that is by witnesses swearing that they would not believe him or her in a court of justice—may be sustained by similar proof of character, that is by witnesses swearing they would believe him or her on their oath. How far an

impeachment is successful is a question for the jury. You are the tribunal that is to pass upon that."

5. Because the court erred in charging as follows : " The punishment for persons convicted of murder shall be death —but may be confinement in the penitentiary for life in the following cases : If the jury trying the case shall so recommend, or if the conviction is founded solely on circumstantial testimony, the presiding judge may sentence to confinement in the penitentiary for life. In the former case it is not discretionary with the judge, and in the latter it is."

6. Because the court erred in not permitting the introduction of Silas Wright as a witness for the defendant, who had been subpœnaed, notwithstanding the declaration of defendant's counsel that this witness had not been called by inadvertence, and that his testimony was material.

7. Because the verdict was contrary to evidence, law, and the charge of the court.

The court appended to the 6th ground the following note :

"Defendant proposed to introduce the witness after the state had closed, the defendant closed, and the state in rebuttal closed. The court declined to permit the witness to be examined except in rebuttal, counsel for defendant not stating that they had omitted examining him through inadvertence."

The motion was overruled, and defendant excepted.

Lewis Arnheim, for plaintiff in error.

C. B. Hudson, solicitor-general ; D. H. Pope ; Hawkins & Hawkins, for the state.

Bleckley, Justice.

1. A motion to quash an indictment is in the nature of a demurrer, and ought to be rested upon some matter apparent upon the face of the indictment or elsewhere in the record. 4 Halst., 293 ; 19 Conn., 477. Such a motion cannot bring to the attention of the court a fact disconnected

with the prior proceedings and the truth of which depends upon evidence *dehors* the record. The indictment alleged that the mortal wound was given on a certain specified day, and that on the same day the man died. The motion to quash set up that the man was in life on that day and for many days thereafter, and that the indictment ought, for this reason, to be quashed. The state demurred to the motion, the demurrer was sustained, and the motion went out. We can have no doubt that the motion was only an informal traverse of one of the allegations of the indictment, and that the issue it sought to raise was quite too narrow, and quite immaterial. Let the substance of the motion be regarded as a special plea, and it presents no sufficient answer to the indictment; for it is not essential that the date of the offense should be proved exactly as charged, the limits of proof being, on the one hand, the finding of the bill of indictment, and on the other, the earliest period not excluded by the statute of limitations. 4 *Ga.*, 341; 11 *Ib.*, 53; 13 *Ib.*, 396; 17 *Ib.*, 439; 18 *Ib.*, 736. True it is that the offense of murder is not complete until death has occurred, but if the death and the mortal wound fall upon the same day, it matters not that the day be subsequent to that laid in the indictment, provided it has elapsed when the indictment is found. To show simply that the deceased was alive after the time that the indictment alleges he died, is no ground for acquittal.

2. In reference to the restriction put by the court upon the examination of the witness Wright, it is to be noted that this witness was offered when the adducing of evidence was in what may be termed the fourth stage. The state had gone through its case; the defense had gone through its case; the state had rebutted; and the defense then brought up Wright and proposed to enter afresh on its general case, giving no excuse for the omission to introduce the witness at an earlier stage. The court required the examination to be restricted to matter in sur-rebuttal of the state's rebutting evidence. It was no doubt within the

discretion of the court to have allowed a wider range of examination, but we think the defense could not claim it as matter of right, nor do we see that the court abused its discretion in denying it. There has to be some order in submitting evidence, and the court but adhered to the usual order. Any departure from that order ought to be attended with something special in the given instance, either in the shape of excuse by the dilatory party, or some suggestion which the circumstances transpiring under the observation of the court make to the mind of the presiding judge. Surely it is not allowable for a party to cut up his evidence arbitrarily at his pleasure, and present it by installments, with no regard to the particular stage or stages at which its introduction is appropriate. The motion for a new trial affirms that the inadvertence of counsel was mentioned as an excuse for holding back the witness, but instead of verifying this statement, the presiding judge expressly contradicts it.

3. Several of the points made and argued may be grouped under one head, and disposed of by a mere reference to the authorities which control them. On the subject of *alibi* the court charged the jury conformably to the view expressed by this court in 59 *Ga.*, 142. And see 63 *Ga.*, 85. In reference to the evidence of an accomplice, the charge given will be found supported by Roscoe's Cr. Ev., 456, *et seq.*, and 52 *Ga.*, 106, 398. The effect of threats as evidence was a topic of argument here, and as to which see 49 *Ga.*, 12; 58 *Ib.*, 224. In so far as the charge of the court deals with the principle of *falsus in uno falsus in omnibus*, it is in line with the general tenor of the cases. 59 *Ga.*, 63; 53 *Ib.*, 365, and cited cases. The matter of impeaching and supporting witnesses by proof of general character, is treated by the Code, §§3871, 3873, 3874. We perceive no want of fulness or accuracy in that part of the charge on this subject which the motion for a new trial sets forth.

4. What the court charged on the relative powers of

the court and jury over the punishment, was in terms of the act of December, 1878. Grant that because that act was subsequent to the commission of this homicide its provisions would not be applicable, the only result would be that to apply it to the case would be an error in favor of the accused and not against him. If the act makes any change in the prior law, it undoubtedly softens it, and thus if the true rule was not administered it was put aside for one more mild and beneficent, and one which, prior to the trial, had received express legislative sanction.

5. On the evidence in the record it is quite impossible for us to say that the jury had no right to convict. The accomplice was corroborated indirectly on the main point in controversy by several circumstances of some degree of weight. Among them were recent threats made by the accused, his presence on the premises at the time the killing occurred, coupled with his anxiety to go as a messenger to report the killing to a neighbor, his following after the messenger without being sent, and his conduct, when search was made for tracks in the yard, in trying to keep in advance of the party, as if his purpose might be to obliterate or confuse the tracks, if any, before they were seen by others. While there is room for some slight apprehension that the jury may, perchance, have reached an erroneous conclusion, we feel sure that we render a more faithful obedience to law by leaving the verdict to stand, than we would by setting it aside. "Moral and reasonable certainty is all that can be expected in legal investigation." Code, §3749. The accused was fairly and legally tried, and his conviction was not unwarranted by the law and the evidence.

Judgment affirmed.