THE RICHMOND AND DANVILLE RAILROAD CO. *v.* ALLISON.

1. The city court of Atlanta, being invested by statute with power
over both civil and criminal business at its March and September
terms, was not deprived of its jurisdiction over civil business at
these terms by a subsequent statute withdrawing all criminal

jurisdiction. Such withdrawal did not operate by implication to abolish these terms of the court.

2. There was no error in the charge of the court on the subject of damages. The verdict was warranted by the evidence, and was not excessive in amount.

May 2, 1892. GOBER, Judge, presiding, by consent of parties, in place of SIMMONS, J., absent from providential cause.

Damages. New trial. Jurisdiction. Before Judge VAN EPPS. City court of Atlanta. September term, 1891.

On the last trial of this case the jury found for the plaintiff $12,000 damages. The defendant's motion for a new trial contains the following grounds:

That the September term of the city court had been abolished by law prior to the trial, and on September 17, the time of the trial, was in session without authority of law; and therefore the juries were illegally organized, and no verdict could be returned nor legal judgment rendered. In overruling this ground the judge cites the act creating the criminal court of Atlanta (Acts 1890–91, vol. 2, p. 935) and the acts of 1884–5, p. 469, holding that the act of 1891 did not interfere with the March and September terms of the city court as to civil business.

That the verdict is so excessive as to shock the moral sense and indicate bias and prejudice, and is contrary to that portion of the court's charge to the jury in which they were instructed that it was their duty to do justice and not enrich the plaintiff at the expense of the defendant. The record shows that the plaintiff was injured by the overturning of the car in which he was employed as a postal clerk, down an embankment, while the defendant's train was running at a speed of twenty to thirty miles an hour. He was about twenty-one years old, and was earning a salary of $1,150 a year. As to the extent of his injuries, there was evidence that his fall produced concussion of the spine, disorder of bowels

and urinary organs, partial paralysis, shrinkage of one leg about an inch, more than twenty pounds loss of weight, weakness of nerves, eyesight and hearing, permanent and almost total disability to labor, much pain and suffering, etc. He was confined to bed for four months, and afterwards used a crutch for some time.

That the court erred in charging, on the subject of damages for permanent injuries, as follows : " No fixed rule exists for estimating this sort of damage. The plaintiff's age, expectation of life, habits, health, strength, sex, vocation, the rate of wages earned by him in the past by his labor, his present and probable future ability to labor, his prospect of obtaining steady and remunerative employment in the future, his prospects, if any, of increased earnings in the future,—these circumstances, in so far as they may be illustrated by the evidence, are all circumstances proper to be taken into account." The defendant alleges that there was no evidence as to " prospects, if any, of increased earnings in the future," on which to base such a charge, and that the realization of such prospects depends upon so many contingencies as to forbid their consideration as an element of damage.

JACKSON & JACKSON and EMMETT WOMACK, for plaintiff in error.

HOKE & BURTON SMITH and J. R. WHITESIDE, *contra*.

GOBER, Judge.

This case has been here before. See 86 *Ga.* 145. Upon the new trial the plaintiff got a verdict for a large amount. To the refusal of a new trial upon the general grounds, the defendant below brings the case here. Upon the grounds insisted on, the right and power of the trial judge to grant a new trial is based upon two sections of the code, one of which is as follows : " §3713. In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the presiding judge may grant a new trial before another

jury." This section speaks for itself; it furnishes an exact rule by which a verdict is to be measured; by it a verdict is either right or wrong.

No section of the code has been considered oftener than section 3717; concerning it much has been said and decided. It is as follows: "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of evidence, although there may appear to be some slight evidence in favor of the finding." Some of the leading ideas enunciated by this court upon this section are: "The discretion of the trial judge will not be controlled in the grant or refusal of a new trial, unless such discretion has been abused; discretion in refusing a new trial not controlled, though Supreme Court as a jury would have found a different verdict; the discretion of the trial judge in refusing a new trial, not controlled if there is any evidence to sustain the verdict."

"A motion for new trial on the ground that the verdict is strongly and decidedly against the weight of the evidence, is addressed to the sound discretion of the judge of the superior court, and this court will not review or control his discretion in refusing a new trial, if there is enough evidence to support the verdict." 74 *Ga.* 407. Following, upon the same page, we have: "This court has no discretion to grant new trials, but such discretion is vested in the judges of the superior courts. When there is no evidence to sustain the verdict, the law demands a new trial, and this court will declare the law. But if there is any evidence to sustain the verdict, the motion for new trial on that ground is addressed to the discretion of the court below, and this court will not interfere."

In 63 *Ga.* 85, Judge BLECKLEY, in speaking of the case then under consideration, says: "The evidence is not

conclusive. It pushes the mind into that great pitfall called doubt, and there leaves it. The jury are the best doctors of doubt that we know of, especially when their treatment has been revised with approval by the presiding judge. This court has enough pressure in solving doubts of law without extending its researches into those of pure fact; and, moreover, it is not lawful to break up a verdict on a mere doubt as to the matters of fact."

These *dicta* could be multiplied indefinitely from the hundreds of cases wherein this point has been considered. This much is offered, not that it is new, but it is profitable. There is no safety except in standing on the rule. To attack either the verdict of a jury or the discretion of the trial judge by magnifying unimportant technicalities is to make them ever afterwards stumbling-blocks in the way of judicial investigation.

It is insisted from the amount of the verdict that it is the result of prejudice and bias. The defendant below did not deny liability; the defence introduced no evidence. This record sets forth a terrible injury and great pain and suffering. Not one fact was contested. The jury has passed upon the case as presented, and their conclusion is embodied in this verdict. The argument that a verdict is the result of prejudice and bias is one that is easily made; it is the baldest of platitudes, and can be offered in the face of almost any state of facts. It is no concern of the appellate court what verdict is rendered where such finding is proper and fair from the evidence. The prevailing party who gets a verdict has a property right in it; the court that sets it aside without some sufficient reason forgets the constitution which declares that the right of trial by jury shall remain inviolate. Such decision ought never to appear as a search for an excuse to give the losing party another chance. The appellate court, as the expositor of the law, must obey the law; it is bound by the law as other

courts are bound by it; it must follow precedent as other courts follow it. To set aside this verdict, sup-ported by the evidence and approved by the trial judge, would be to overturn half a century of precedent and disregard the plain rules of the law. Courts must take the verdicts of juries, when proper from the evidence, as a right conclusion as to what is the truth of a case. The verdict here is a conclusion as to two main facts: the right of the plaintiff to recover, and the amount of his damages.

Whoever has had any experience with juries must concede that they endeavor to do right. They take questions of fact in a practical way, unimpeded by the legal fetters that restrain a professional mind. They may not find sometimes as a court would find. The reply is, the law has left this work to them. If they do their work fairly under the rules, courts ought not to disturb their verdicts. In " Trial by Jury," by Forsyth, he says: " It was said of Socrates that he first drew philosophy from the clouds, and made it walk upon the earth. And of the civil jury it may be also said that it is an institution which draws down the knowledge of the laws to the level of popular comprehension." From this standpoint, in a practical way, by practical men, verdicts are made.

There has been much complaint as to burdensome verdicts in damage cases, and much complaint as to the way in which some of these cases are originated and carried on. The ideas prevailing in this respect have been offered in this argument. A court should be a place where justice is judicially administered; not a trap to catch and hold a defendant whilst he is fleeced under the forms of law. When we reflect that the ultimate object of all our laws is to put twelve upright and intelligent men in the jury-box, before whom the humblest citizen may demand redress for any invasion

of his rights, the matter is seen as it is and assumes its true importance. For this men pay taxes and bear the burdens of civil liberty. Let us have jurors who would find no more against one defendant on the same facts than against another defendant, no more against a railroad than a private citizen; intelligent men who know there are one hundred cents in every dollar, and who are willing to feel the weight of the coin as they transfer it from the pocket of one man to that of another. Let them be upright men who fear God and the doing of wrong.

This verdict is for a large amount. A small portion of the damage cases brought ever reach this court. They are chocked into the courts below as so much straw to be threshed for a little grain. That there should be now and then a verdict for a large amount is not strange. To expect otherwise is to regard personal injuries as cheap, and to be so considered by the juries. It is argued that cases of this character seek particular counties for trial. If so, and it is necessary, our statutes should be so changed that it ought not to be possible to dump all these cases into any particular courts. The cases ought to be tried in the counties where the injuries happen; there, in nine cases out of ten, the plaintiffs are known, and their evidence, character and claims can be best appreciated and considered by a jury of the vicinage. It is unfair that the business of any particular court should be blocked by the alleged injuries of half of the State; it is unfair to the court; it is oppressive to the county. To gather such litigation in one county gives opportunity for doing much which, it is complained, is prevalently done. God forbid that anybody should lessen by one cent a just claim, but the extravagant claims, measured in many instances by multiples of ten thousand dollars, for such injuries as mashed toes and skinned shins, have bred in

such connection a familiarity with large amounts, that has doubtless had its effect in an extended horizon in the consideration of these cases, and has not lessened the amounts of the findings.

In this case there have been two trials and two verdicts. There ought to be an end to litigation. Suitors are after results. Cases are brought that there may be an end to controversies. The law deals with rights. It must enforce and redress them. It can hope to afford only substantial justice. It is not helping the injured party to play battledoor and shuttlecock with his case from appellate to trial court. Where it is solely an issue of fact and has been tried by two juries, with concurrent verdicts supported by the evidence and approved by the trial judge, there must be an end to it.

The other points made have been considered in the head-notes.    *Judgment affirmed.*