## 50060. THE STATE v. HOUSTON.

STOLZ, Judge.

Pursuant to the provisions of Code Ann. § 6-1001a (a) (Ga. L. 1973, pp. 297, 298), the state appeals from the sustaining of the accused's pretrial motion to quash his indictment for robbery on the ground that counsel was not appointed to represent him prior to a preliminary hearing at which he was bound over to the grand jury.

1. A motion to quash, being the equivalent of a demurrer, is not a proper method of attacking an indictment for a defect not appearing upon its face, or setting up matters of fact outside of other pleadings and the record. See *Jackson v. State,* 64 Ga. 344 (1); *Millhollan v. State,* 221 Ga. 165, 166 (1) (143 SE2d 730); *Wingfield v. State,* 231 Ga. 92, 101, 105 (200 SE2d 708) and cits.; *Walker v. State,* 73 Ga. App. 20 (1) (35 SE2d 391) and cits.; *State v. Hooper,* 132 Ga. App. 413, 414 (208 SE2d 161) and cits.

2. There is some authority, however, for treating the motion to quash as a plea. In *Jackson v. State,* supra, p. 347, the court, after noting the impropriety of the motion in that case, said, "Let the substance of the motion be regarded as a special plea, and it presents no sufficient answer to the indictment...," and proceeded to rule on the motion as a plea. In *Bryant v. State,* 224 Ga. 235 (161 SE2d 312), the court said, "Though the defendant designated these motions as motions to 'quash' the indictment, we treat them as being pleas in abatement or a special plea in bar." "It is an elementary rule of pleading that substance, not mere nomenclature, controls." *McDonald v. State,* 222 Ga. 596, 597 (1) (151 SE2d 121) and cits.

3. In the case before us, the defendant was arrested and charged with the offense of robbery. On July 15, 1974, a preliminary hearing was held, at the conclusion of which the defendant was bound over to the Fulton County Grand Jury. The record reveals that at the preliminary hearing the defendant was not represented by counsel. The simple issue presented is whether the right to counsel extends to the accused at the preliminary hearing. Stated another way, the issue is whether the preliminary hearing is a "critical stage" so as to entitle the accused to

the right to counsel.

The state contends that there is no constitutional right to a preliminary hearing, and cites federal decisions and Georgia Supreme Court authority. See *Phillips v. Stynchcombe,* 231 Ga. 430, 433 (202 SE2d 26) and cits. We agree. Where a person is indicted by the grand jury without previously being arrested and placed in custody, the necessity for a preliminary hearing does not exist. The state recognizes that the case sub judice is "on all fours" with the decision of this court in *Dismuke v. State,* 127 Ga. App. 835 (195 SE2d 259), but most respectfully submits that the *Dismuke* decision was wrong. With equal respect, we disagree.

Perhaps the earliest of the modern cases involving the right to counsel, is Powell v. Alabama, 287 U. S. 45 (53 SC 55, 77 LE 158, 84 ALR 527) (1932), the famous "Scotsboro Case." There, the U. S. Supreme Court (p. 68), expressed the logic that has become the foundation for full implementation of the right to counsel thusly: "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense."

The provisions of the Bill of Rights are made obligatory upon the states by the Fourteenth Amendment. The Sixth Amendment's guarantee of counsel is one of these fundamental rights. Gideon v. Wainwright, 372 U. S. 335, 342 (88 SC 792, 9 LE2d 799, 93 ALR 733) (1962). In Gideon (p. 344), the court found that "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him."

Specific examples of the U. S. Supreme Court's application of its expressions in Powell, supra, and Gideon, supra, may be found in Massiah v. United States, 377 U. S. 201 (84 SC 1199, 12 LE2d 246)(1963); Escobedo v. Illinois, 378 U. S. 478 (84 SC 1758, 12 LE2d 977) (1963); Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974) (1965) (right to counsel during custodial interrogation); Hamilton v. Alabama, 368 U. S. 52, 54 (82 SC 157, 7 LE2d 114) (1961) (arraignment); United States v. Wade, 388 U. S. 218 (87 SC 1926, 18 LE2d

1149) (1966) and Gilbert v. California, 388 U. S. 263 (87 SC 1951, 18 LE2d 1178) (1966) (lineup).

In Coleman v. Alabama, 399 U. S. 1 (90 SC 1999, 26 LE2d 387) (1969), the U. S. Supreme Court was called upon to determine whether, under Alabama law, a preliminary hearing was a "critical stage" of the state's criminal process. In holding that it is, the court stated and reasoned on p. 9: "Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

"The inability of the indigent accused on his own to realize these advantages of a lawyer's assistance compels the conclusion that the Alabama preliminary hearing is a 'critical stage' of the State's criminal process at which the accused is 'as much entitled to such aid [of counsel] . . . as at the trial itself.'" There is no substantial difference in the Alabama and Georgia statutes relating to preliminary hearings.

"[H]istorical background suggests that the core purpose of the counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor. Later developments have led this Court to recognize that 'Assistance' would be less than meaningful if it were limited to the formal trial itself.

"This extension of the right to counsel to events

before trial has resulted from changing patterns of criminal procedure and investigation that have tended to generate pretrial events that might appropriately be considered to be parts of the trial itself. At these newly emerging and significant events, the accused was confronted, just as at trial, by the procedural system, or by his expert adversary, or by both. In Wade, the Court explained the process of expanding the counsel guarantee to these confrontations:

" 'When the Bill of Rights was adopted, there were no organized police forces as we know them today. The accused confronted the prosecutor and the witnesses against him, and the evidence was marshalled, largely at the trial itself. In contrast, today's law enforcement machinery involves critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality. In recognition of these realities of modern criminal prosecution, our cases have construed the Sixth Amendment guarantee to apply to "critical" stages of the proceedings.' 388 U. S., at 224 (footnote omitted).

"The Court consistently has applied a historical interpretation of the guarantee, and has expanded the constitutional right to counsel only when new contexts appear presenting the same dangers that gave birth initially to the right itself.

"Recent cases demonstrate the historical method of this expansion. In Hamilton v. Alabama, 368 U. S. 52 (1961), and in White v. Maryland, 373 U. S. 59 (1963), the accused was confronted with the procedural system and was required, with definite consequences, to enter a plea. In Massiah v. United States, 377 U. S. 201 (1964), the accused was confronted by prosecuting authorities who obtained, by ruse and in the absence of defense counsel, incriminating statements. In Coleman v. Alabama, 399 U. S. 1 (1970), the accused was confronted by his adversary at a 'critical stage' preliminary hearing at which the uncounseled accused could not hope to obtain so much benefit as could his skilled adversary.

"The analogy between the unrepresented accused at the pretrial confrontation and the unrepresented de-

fendant at trial, implicit in the cases mentioned above, was explicitly drawn in Wade:

" 'The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness—"that's the man." ' 388 U. S., at 235-236.

"Throughout this expansion of the counsel guarantee to trial-like confrontations, the function of the lawyer has remained essentially the same as his function at trial. In all cases considered by the Court, counsel has continued to act as a spokesman for, or advisor to, the accused. The accused's right to the 'Assistance of Counsel' has meant just that, namely, the right of the accused to have counsel acting as his assistant. In Hamilton and White, for example, the Court envisioned the lawyer as advising the accused on available defenses in order to allow him to plead intelligently. 368 U. S., at 54-55; 373 U. S., at 60. In Massiah counsel could have advised his client on the benefits of the Fifth Amendment and could have sheltered him from the overreaching of the prosecution. 377 U. S., at 205. Cf. Miranda v. Arizona, 384 U. S. 436, 466 (1966). In Coleman the skill of the lawyer in examining witnesses, probing for evidence, and making legal arguments was relied upon by the Court to demonstrate that, in the light of the purpose of the preliminary hearing under Alabama law, the accused required 'Assistance' at that hearing. 399 U. S., at 9.

"The function of counsel in rendering 'Assistance' continued at the lineup under consideration in Wade and its companion cases. Although the accused was not confronted there with legal questions, the lineup offered opportunities for prosecuting authorities to take advantage of the accused. Counsel was seen by the Court as being more sensitive to, and aware of, suggestive influences than the accused himself, and as better able to reconstruct the events at trial. Counsel present at lineup would be able to remove disabilities of the accused in precisely the same fashion that counsel compensated for

the disabilities of the layman at trial. Thus, the Court mentioned that the accused's memory might be dimmed by 'emotional tension,' that the accused's credibility at trial would be diminished by his status as defendant, and that the accused might be unable to present his version effectively without giving up his privilege against compulsory self-incrimination. United States v. Wade, 388 U. S., at 230-231. It was in order to compensate for these deficiencies that the Court found the need for the assistance of counsel.

"This review of the history and expansion of the Sixth Amendment counsel guarantee demonstrates that the test utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." United States v. Ash, 413 U. S. 300, 309-313 (93 SC 2568, 37 LE2d 619).

"The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious. Consistently with the wise policy of the Sixth Amendment and other parts of our fundamental charter, this Court has pointed to '. . . the humane policy of the modern criminal law. . .' which now provides that a defendant '. . . if he be poor, . . . may have counsel furnished him by the state . . . not infrequently . . . more able than the attorney for the state.' . . .[*C*]*ompliance with this constitutional mandate is an essential jurisdictional prerequisite to a . . . court's authority to deprive an accused of his life or liberty*. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. *If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth*

*Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty."* (Emphases supplied.) Johnson v. Zerbst, 304 U. S. 458, 462, 467 (58 SC 1019, 82 LE 1461, 146 ALR 357) (1937).

The record before us does not show constitutional waiver of the defendant's Sixth Amendment rights and the case is controlled by the United States Supreme Court decisions previously cited. It is factually different and distinguishable from *Phillips v. Stynchcombe,* 231 Ga. 430, supra, where the defendant did not raise the issue upon his trial or appeal therefrom, but only later by habeas corpus petition, or *Hunt v. Hopper,* 232 Ga. 53 (205 SE2d 303), which was based thereon. In the case at bar, the issue was timely raised and ruled upon by the trial judge. While this court is bound by the decisions of our Supreme Court, where there is a conflict between that court and the United States Supreme Court, the latter is the controlling authority on this court. We further note that *Phillips v. Stynchcombe,* supra, was by a divided court, with four Justices concurring in the majority opinion, one Justice concurring in the judgment only and two Justices dissenting. Since the decision in that case, two of the Justices voting with the majority have retired. The dissents expressed by Justices Gunter and Ingram are in harmony with the federal decisions cited.

*Judgment affirmed. Deen, P. J., and Evans, J., concur.*

Submitted January 14, 1975 — Decided February 4, 1975 — Rehearing denied February 19, 1975 — 

*Lewis R. Slaton, District Attorney, R. David Petersen, Gordon H. Miller, Joseph J. Drolet, Assistant District Attorneys,* for appellant.

*Billy L. Spruell,* for appellee.