### Harrison *v.* The State of Georgia.

1. Where no motion for a continuance is made for absence of counsel or witnesses, the court does not err by disregarding such absence, the accused having had full time after his arrest to prepare for trial. Cumulative evidence to prove an *alibi*, even if newly discovered, is not cause for a new trial.
   v 83–9

2. A charge to the jury which, properly construed, makes presence at the time and place of the homicide a necessary condition of guilt, is favorable, not prejudicial to the accused.

3. Touching *alibi*, the rule in Georgia as established by authority consists of two branches. The first is, that to overcome proof of guilt strong enough to exclude all reasonable doubt, the *onus* is on the accused to verify his alleged *alibi*, not beyond reasonable doubt, but to the reasonable satisfaction of the jury. The second is that, nevertheless, any evidence whatever of *alibi* is to be considered on the general case with the rest of the testimony, and if a reasonable doubt of guilt be raised by the evidence as a whole, the doubt must be given in favor of innocence. In sense and substance, the charge of the court in the present case conformed to the rule, certainly to the latter branch of it.

4. The jury are not precluded from considering the prisoner's statement throughout by instructing them that the statute allows them to believe it on material matters in preference to the sworn testimony.

5. The evidence was conflicting, the credibility of the witnesses was for the jury, and their verdict was warranted if they believed those who testified in behalf of the State and did not believe those who testified in behalf of the accused.

April 24, 1889.

Continuance. Evidence. Practice. Charge of court. Criminal law. *Alibi.* Burden of proof. Prisoner's statement. Verdict. New trial. Before Judge RICH-ARD H. CLARK. Dekalb superior court. August term, 1888.

Reported in the decision.

HAYGOOD & DOUGLAS, and H. C. JONES, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, and JOHN S. CANDLER, solicitor-general, for the State.

BLECKLEY, Chief Justice.

The plaintiff in error bears three names in the record: Harrison, Haralson and Harris. He was convicted of murder and sentenced to imprisonment for life. The person killed was Hurst, the marshal of Decatur. The homicide occurred whilst the marshal had in custody one Hubert, in the midst of a large crowd, some of

whom were endeavoring to rescue the prisoner or promote his escape from the officer. Several shots were fired, and there is no doubt that one of them killed the marshal. The indictment was found at the February term, 1888, and the trial took place at the following August term. Harrison was arrested upon a bench warrant, and was confined in jail for about six months. General Gartrell, one of his counsel, was not present at the trial, but was represented by Mr. Haygood. There was no motion made for a continuance, but Mr. Haygood stated to the court that he had received a telephonic message from General Gartrell saying that he could not attend on account of the illness of his wife, and requesting Mr. Haygood to represent him. It seems that at that stage steps were taken to subpœna more witnesses in behalf of the accused, and these witnesses or most of them came into court while the trial was in progress, but neither the accused nor his counsel saw them or knew of their presence. The court had no concern with the matter, and was not called upon in any way to continue the case, suspend it or postpone the trial,

1 Affidavits by these witnesses produced on the motion for a new trial, show that their evidence would have been material upon the question of *alibi*, but it would only have been cumulative, as other witnesses testified on that subject in the prisoner's behalf. The policy of the law is adverse to granting new trials on account of merely cumulative evidence, more especially where the point to which the evidence relates is the defence of *alibi*. *Wright* v. *The State*, 34 *Ga.* 110. The decisive matter, however, against this ground of the motion for a new trial is, that there was no diligence to have the witnesses at court. Although the prisoner knew of them, he took no steps to have them served with process until his case was called for trial, and he

neither made a motion for continuance, nor rendered any reason to the court to explain his delay in having them summoned. If the absence of General Gartrell as counsel was cause for a continuance, a motion to continue on that ground should have been made. Certainly the court was warranted in disregarding his absence as well as that of the witnesses, under all the circumstances.

2. The court charged the jury that if they did not believe the accused was present endeavoring with the others to effect the rescue, they could not find him guilty, because his presence was necessary at that time in order to convict him. This charge is complained of because the evidence shows that the rescue from the marshal took place several hours before the affray in which Hurst was killed, and hence the charge was equivalent to intimating to the jury that if they were satisfied the prisoner was engaged in that rescue, they could from that infer that he was present at the killing of Hurst. There is no merit in this ground of the motion. The rescue referred to in the objection was accomplished, and the court's charge related to a subsequent attempt to effect another rescue, and it was during that attempt that the homicide took place. Instead of the charge being hurtful to the accused, it was altogether favorable to him. It states that his presence was necessary at the time. What time? The time of the killing, of course,—not several hours previously.

3. Another part of the charge was as follows: " Well now, the next thing is as to the strength of the evidence of *alibi*, what that evidence (considering the credibility of the witnesses and what the witnesses testified to) amounts to. The law says that it must outweigh the evidence introduced on the part of the State; provided, as I have charged you, if the State's evidence

is sufficiently strong, without more, to produce a con-
viction in your minds of the guilt of the prisoner
beyond a reasonable doubt; in order to remove *that*, the
*alibi*—the testimony sustaining the *alibi*, in the judg-
ment of the jury, should outweigh or preponderate over
the evidence for the State."

The first objection to this charge is, that it directed
the attention of the jury to the credibility of the pris-
oner's witnesses specially, and in no part of the charge
were they instructed to look to the credibility of the
State's witnesses. This criticism is of but slight value,
and we think it needs no discussion.

The next objection is more grave, but we think it is
answered by construing the whole charge together as
we find it in the record. The objection is, that the
language of the court excluded the testimony of *alibi* as
it affected the question of reasonable doubt upon a con-
sideration of all the testimony, unless such testimony
outweighed the evidence for the State, whereas the pris-
oner was entitled to the benefit of a reasonable doubt
produced in the minds of the jury by the consideration
of all the evidence, including that of *alibi*, at the close
of all the testimony. On looking at the full charge, we
find the jury were instructed thus: "Now do you be-
lieve from the evidence that this defendant was there?
Because you must fix him there in order to convict him
of anything. And that in the next place he was one
of this party? And that the common purpose and de-
sign of that party [was to effect a] rescue, and in that
rescue the marshal lost his life? I say if you believe it
beyond a reasonable doubt, it would be your duty to
find the defendant guilty of the crime of murder,—if,
as I have charged you, of course, you believe his death
was caused by a shot from some one of the persons who
were engaged in that rescue."

Again, "If the State has made out such a case as I

have narrated to you, then you would proceed further in your investigation and say whether the defendant by his evidence has relieved himself from the effect of the State's evidence, or has put the matter in such a condition as would raise upon your mind a reasonable doubt as to his guilt."

Again, "You have observed, gentlemen, that whether you depend upon the evidence of the defendant's guilt, or whether you take the statement into consideration or not, whatever you believe against him you must believe beyond a a reasonable doubt."

Again, "If you do not believe that he is guilty, or have a reasonable doubt as to his guilt, you will say, ' We, the jury, find the defendant, Sandy Harris, not guilty.' "

Under these instructions, the jury, we think, must have felt it incumbent upon them to give the prisoner the benefit of any and all reasonable doubt upon summing up the entire evidence, including that relating to the *alibi;* and this, in the present state of the Georgia authorities, seems to be sufficient. Compare *Arnold* v. *The State,* 53 *Ga.* 325; *Johnson* v. *The State,* 59 *Ga.* 142; *Goldsmith* v. *The State,* 63 *Ga.* 85; *Jackson* v. *The State,* 64 *Ga.* 344; *Wade* v. *The State,* 65 *Ga.* 756; *Landis* v. *The State,* 70 *Ga.* 651; *Bryan* v. *The State,* 74 *Ga.* 393; *Ledford* v. *The State,* 75 *Ga.* 856; *Simpson* v. *The State,* 78 *Ga.* 91. The cases which perhaps bring out the exact shades of our law touching *alibi* the most fully, are *Landis* v. *The State,* and *Ledford* v. *The State, supra;* and the doctrine of these cases, especially of the latter, is this: " Though the burden was the defendant's to show *alibi* to the satisfaction of the jury, and on that issue reasonable doubts would not avail him, yet on the final issue of guilty or not guilty, . . . all the evidence is for the consideration of the jury, and it is for them to say whether, from all of it, he is guilty beyond a reasonable doubt."

Were our own minds not hedged in by authority, we should be inclined to adopt the view expressed by Judge Thompson (2 Thomp. on Trials, §2436), who, after recognizing that the burden of proof is upon the accused, adds: "But upon the most unshaken grounds this burden is sustained, and an adequate *quantum* of proof produced by the defendant, when he succeeds in raising a reasonable doubt in the minds of the jurors as to whether or not he was at the place of the crime when it was committed." See the various lines of decision on the subject stated and discussed in 2 Thomp. on Tr. *supra*, §§2435–2442. It seems to us that in the metaphysics of trial, there is great difficulty in distinguishing between reasonable doubt on the specific defence of *alibi*, and reasonable doubt of guilt upon the whole case taken together. Where presence is necessary to constitute guilt, it seems that a reasonable doubt of presence would, by irresistible logic, involve reasonable doubt of guilt.

As well as we can formulate the rule prevailing in Georgia, we have done so in the third head-note to this opinion. The exception in this case goes to the second branch of the rule, and on that branch, if not on the first, the charge as a whole conforms, in sense and substance, to the rule.

4. On the subject of the prisoner's statement, the court charged as follows: "What the law means by believing it in preference to the sworn testimony is, when the sworn testimony and the statement conflict in material matters; and material matters are those necessary to constitute the offence."

This charge is attacked as instructing the jury that the prisoner's statement could not avail him unless in conflict with the sworn testimony, and as denying him the benefit of his statement if sustained or corroborated by the witnesses. No fair construction of the

charge could extract from it this meaning. The statute says that the jury may believe the statement in preference to the sworn testimony; and the court explained the import of the statute, and did not undertake to limit the jury, in their consideration of the statement, to those matters touching which it might be in conflict with the evidence. There was nothing said as to the statement not being available upon other matters. The charge given in *Lovejoy* v. *The State*, 82 *Ga.* 87, was obnoxious to that objection, part of the instruction then being, "His statement, to avail him, must be in those parts that are in conflict with the evidence, and in conflict in material matters." No such phraseology as this occurs anywhere in the charge now under consideration. But why should the presiding judge be more specific than the statute itself, or go beyond its terms? There is no obscurity or ambiguity in the statute. The legislature has made the matter as clear as can the judiciary. Why should not the legislature be left to address the jury in its own language?

5. The remaining grounds of the motion for a new trial (except the 11th, which was not argued) go to the question of sufficiency of the evidence under the law to warrant conviction. The evidence was apparently conflicting as to whether the accused was present at the scene of the crime or not. Two witnesses for the State identified him as present, and one of them testified that he took part in the shooting. As many or more witnesses in his behalf testified to his absence. Upon the jury devolved the responsibility of discriminating between these antagonistic witnesses, comparing their credibility, and discovering where the truth lay. They have performed their function, the presiding judge has approved their finding; and while we can perceive that a mistake may have been committed, we have no such evidence of it as would warrant us in setting aside the verdict and directing a new trial. *Judgment affirmed.*