## JOLLEY *v.* THE STATE.

No. 7559. APRIL 18, 1930.

*Earl W. Butler,* for plaintiff in error.

*George M. Napier, attorney-general, Charles H. Garrett, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

BECK, P. J. Lucius Jolley, the plaintiff in error, was indicted for the offense of murder, it being charged in the indictment against him that he did unlawfully, feloniously, and with malice aforethought, with a knife, the same being a weapon likely to produce death, cut and stab Angeline Jolley, thereby inflicting upon her a mortal wound from which she then and there died. Upon the trial the defendant filed a plea of not guilty. After the submission of evidence, the defendant's statement, and the charge of the court, the jury returned a verdict of guilty, without a recommendation.

The defendant was sentenced to be electrocuted. A motion for a new trial was overruled, and the defendant excepted.

Angeline Jolley, the decedent, was the wife of the defendant. They had been married two or three years, but were living in a state of separation. After they had separated the decedent sent to her former home to get her trunk containing her personal effects. They had been partially destroyed by fire. She swore out a warrant against the defendant for malicious mischief. On an occasion before the date of the homicide, the defendant had gone to see his wife at the house of her mother, and carried a shotgun with him on one occasion, but left it at a store across the street, and then tried to persuade her to withdraw the warrant against him. On the day of the homicide the wife, in company with another woman, met the defendant, and he asked her whether she intended to withdraw the warrant which she had sworn out against him. She would not consent to do so, and he cut and stabbed her with a knife, which, according to a witness for the State, he had concealed or partially concealed in his sleeve. An eye-witness to the homicide testified that she had gone with the deceased to a white person's home and got two bundles of clothes; the witness had one and the decedent had another; and then testified: "When we got to the bridge going back home, the defendant stopped, and he says, 'Angeline, are you going to do what I asked you to do,' and she says, 'You ask me to do so much; what did you ask me to do?' and he says, 'You know,' and she says 'No, I don't know,' and he says, 'Are you going to take the warrant up?' and she says, 'No,' and he asked her that several times, and she says no every time. He was standing in front of her holding her at the time right here by her coat. And I says, 'Honey, my time is getting short, come on,' and she started walking off, and he says, 'Are you going to take that warrant up?' and she says, 'No,' and he stabbed her right here in the breast, and I ran between them, and he stabbed her twice. I did not see him pull the knife out. When he turned her loose she fell on the bridge after he got through. He was holding her while he was stabbing her. I then went to the end of the bridge and hollered. I grabbed his coat and hollered murder, and hollered catch him, and nobody didn't pay me any mind. He stabbed at me; when I tried to catch hold of him he drew back and stabbed at me. I was there when the sheriff came, and Angeline was still lying there." The witness testified that the defendant ran.

An embalmer's assistant, who had handled the body of Angeline Jolley, testified that there were three wounds upon the body of the dead woman; that "she had one wound under the right breast, another on the left side, and one right in the back, between the shoulders and the back. The wounds were about an inch wide and between five and a half and six inches deep, all three of them." They probed the wounds.

The deputy sheriff testified that he "caught the defendant the next morning between six and seven o'clock. He was in the loft of a dwelling-house, 150 or 200 yards from his mother's house. He did not have a knife. Asked him about the knife, he said he threw it away."

The defendant made a statement as follows: "Gentlemen of the jury, we met, and this girl, both of them. We were coming back, we had been after some clothes, and we were talking. I really loved the girl. I didn't mean to do what I did to her. I was out of my head. I didn't know what I was doing. I wouldn't done it for nothing in the world. I ask you all to have mercy on me. That is all I have to say." The deputy sheriff, recalled, testified that he arrested the defendant and "asked him why he wanted to kill his wife. He said she had sworn out a warrant for him, and he was trying to get her to take it up, and she got mad and commenced cursing him and wouldn't hush, and he stuck his knife in her."

The motion for a new trial in the case contains the grounds that the verdict was contrary to the evidence, contrary to law, and without evidence to support it. In an amendment to the motion are several special assignments of error. The first of these is based upon exception to the following portion of the court's charge: "The defendant has made a statement; it is not made under oath. The jury should consider the statement and give it such weight as they think it entitled to have; they may believe the statement in preference to the sworn evidence in the case, if they think proper to do so, where the statement is contrary to the evidence." Movant insists that this charge is error, "because under the law the jury is entitled to believe the statement of the defendant in preference to the sworn testimony of the State. And the fact that the court charged he jury that they may believe the defendant's statement in preference to the sworn testimony of the State where it is

contradictory to the State's evidence or testimony is reversible error." The wording of this charge is not entirely accurate. It might be construed to mean that the jury might believe the statement in preference to the sworn evidence in the case, if they should think proper to do so, where the statement is contrary to the evidence, but otherwise it should not be accepted by them. But this would be evidently a very strained construction; for the court had just instructed the jury that they should "consider the statement and give it such weight as they thought it was entitled to have." The jury, after considering the entire instruction upon the subject of the statement, could hardly have concluded otherwise than that the instructions upon the subject of the statement meant that they should give it such weight as they thought it entitled to have, and that they might *even* believe the statement in preference to the sworn testimony in the case if they thought proper to do so, *even* though the statement was contrary to the evidence. Thus construed—and this is the palpable meaning of the court's instructions,—it was not erroneous. In *Harrison* v. *State,* 83 *Ga.* 129 (9 S. E. 542), error was assigned upon the following portion of the court's charge: "What the law means by believing it [the defendant's statement] in preference to the sworn testimony is, when the sworn testimony and the statement conflict in material matters." And in the opinion in that case it was said: "This charge is attacked as instructing the jury that the prisoner's statement could not avail him unless in conflict with the sworn testimony, and as denying him the benefit of his statement if sustained or corroborated by the witnesses. No fair construction of the charge could extract from it this meaning. The statute says that the jury may believe the statement in preference to the sworn testimony; and the court explained the import of the statute, and did not undertake to limit the jury, in their consideration of the statement, to those matters touching which it might be in conflict with the evidence. There was nothing said as to the statement not being available upon other matters."

■ Exception is taken to the court's charge upon the ground that it did not sufficiently state the contentions of the defendant. The court charged the jury, in part, as follows: "In this case the defendant is on trial charged with the offense of murder. It is charged, in this county, on March 11, 1929, with a knife, razor, or

other instrument of like kind, being a weapon likely to produce death, he made an attack upon Angeline Jolley, feloniously and with malice aforethought, and did cut, stab, and, wound her, giving her a mortal wound of which she died. That is the charge against the defendant, to which he pleads not guilty. He is presumed to be innocent. The plea of not guilty and the charge together make the issue in the case for you to determine; that is, whether he is guilty or is not guilty. At the outset of his trial every defendant is presumed to be not guilty. He is presumed to be innocent, and the jury will so consider him until he is shown to be guilty by evidence that satisfies the jury beyond a reasonable doubt that he is guilty. That is true in every criminal case, and it is true in this case. The proof must establish his guilt to a reasonable and moral certainty and beyond a reasonable doubt." In view of the issue made by the evidence in this case, the statement of that issue by the court, in the absence of a request to charge more fully, was sufficient. The State in the indictment charged the defendant with the offense of murder, in that he did stab and feloniously and with malice aforethought kill the decedent named; and when the defendant filed a plea of not guilty, he put in issue that allegation contained in the indictment; and this the court stated to the jury; and this was a sufficient statement of the issue, unless it was the duty of the court to charge the jury that the defendant claimed that he committed the homicide while in a temporary state of insanity. But the court was not compelled to charge upon the subject of insanity in the absence of any evidence to support that theory, and there is no evidence to support it. If it should be insisted that the defendant's statement authorized a charge upon this subject, the obvious reply is that there was no request to make such a charge; and in the absence of a request, as has been frequently ruled, it is not error for the court to fail to charge upon a theory of the case presented only in the defendant's statement. But we do not mean to intimate that, even if a request had been made to charge upon the subject of insanity, it would have been the duty of the court to give such charge. It is true that the defendant did state that "he was out of his head" at the time of committing the act. With nothing further stated than this, it is very doubtful whether, even though a properly worded request to charge had been given to the court in time, he would

have been required to charge upon the subject of insanity. Evidently the defendant was in a transport of anger when he stabbed his wife, and in a certain sense when a man allows himself to be carried away with such a transport of violent, insensate anger, he might speak of himself, or any one else in describing him might say, that he was out of his head. Suppose a witness had said that the defendant became violently angry when he saw his wife, that he was wild with anger, that he was out of his head; would that have required a charge upon the subject of insanity, in the absence of any other evidence tending to show that he did not know the difference between the right and the wrong of the deed that he then committed? We think not. And therefore it is no ground for reversal of the judgment in this case that the court failed to charge upon this particular subject, or failed to state more fully the issue in the case.

The rulings in headnotes 3 and 4 require no elaboration.
*Judgment affirmed. All the Justices concur.*