Gale H. JOHNSON, Appellant,

v.

John E. BENNETT, Warden Iowa State Penitentiary, Appellee.

No. 18744.

United States Court of Appeals
Eighth Circuit.

Nov. 28, 1967.

Gale H. Johnson, pro se.

Ronald L. Carlson, Iowa City, Iowa, for appellant.

Richard C. Turner, Atty. Gen. of Iowa, and William A. Claerhout, Asst. Atty. Gen., Des Moines, Iowa, for appellee.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by Gale H. Johnson, hereinafter called defendant, from final order of the district court entered after a full and fair evidentiary hearing denying his petition for a writ of habeas corpus. The record shows that the defendant is presently serving a life sentence in the Iowa penitentiary as a result of his conviction by a jury of second degree murder and the permissible life sentence imposed under Iowa law as a result of such conviction. The conviction was affirmed upon appeal; rehearing was denied. State v. Johnson, 221 Iowa 8, 264 N.W. 596; 267 N.W. 91. The trial court has filed two opinions in this case, one on April 26, 1966, and a final opinion on December 6, 1966. This appeal is from the orders of dismissal based upon such opinions.

The trial court issued a certificate of probable cause under 28 U.S.C.A. § 2253 which concludes, "It is ordered that the application of petitioner Gale H. Johnson for the issuance of certificate of probable cause is hereby granted." In the discussion preceding the order, the trial court stated that the certificate is being granted on the basis of asserted violation of constitutional rights arising out of the alibi instruction and that other issues involve factual determinations which would not warrant a certificate. Upon the basis of such statements, the State contends that this appeal is limited to the alibi issue. We do not agree. The order portion above quoted contains no restriction upon issues to be considered upon appeal and it is our view that the order granting the certificate does not limit the issues which defendant may raise upon this appeal. While we have considerable doubt whether the trial court can limit issues to be considered upon appeal by limitations in the certificate, we do not reach such issue here.

The jurisdictional issue of exhaustion of state remedies is not raised by either party. The record before us is not as satisfactory on this issue as we would like to have it. It does appear however that defendant has filed three habeas corpus applications in the appropriate state district court and that he has also filed an original habeas corpus application with the Supreme Court of Iowa, presumably raising the issues here asserted. All such petitions were denied without an evidentiary hearing. The Iowa Supreme Court petition was denied on January 6, 1966, by a summary order stating in substance that the legality of petitioner's imprisonment had been determined by the affirmance of his conviction upon direct appeal and by orders denying prior petitions for habeas corpus. So far as we can ascertain, neither the Iowa legislature nor the Iowa Supreme Court has liberalized the rules for consideration of post-conviction attacks asserting federal constitutional rights have been violated in the proceeding resulting in the conviction. As stated by the Supreme Court in Case v. State of Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed. 2d 422 (concurring opinions), it is highly desirable that the states solve their own problems by providing an adequate means of review of post-conviction attacks asserting substantial violation of

federal constitutional rights. See Baines v. Swenson, 8 Cir., 384 F.2d 621 (Oct. 31, 1967).

■ Upon the record before us, we believe there has been a sufficient showing of exhaustion of available state remedies and that jurisdiction exists in the trial court to consider the petition and in this court to entertain the appeal. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

We now proceed to the consideration of the issues presented by this appeal. Defendant for reversal relies upon the following asserted errors:

I. The use of false evidence against the accused is in conflict with the due process clause of the Fourteenth Amendment and vitiates defendant's conviction.

II. Suppression of the testimony of Orcussi, an important witness, constitutes a denial of due process.

III. The alibi instruction given, which shifts the burden of proof of alibi to defendant, destroys the fundamental presumption of innocence.

IV. The court erred in determining petitioner was afforded a trial consistent with the fundamental concept of justice.

The facts pertinent to this litigation are set out in the opinion of the Supreme Court of Iowa in State v. Johnson, supra, and in the memorandum opinions of the trial court. We shall limit our factual recital to the bare essentials necessary for the consideration of the issues presented.

It is established beyond question that a police officer was fatally shot about 5:30 a. m. on May 27, 1934, while investigating a burglary at a Burlington store. Defendant at his trial was connected with the murder by two types of evidence, identification testimony and testimony relating to an alleged admission by defendant. The two witnesses, Chumney and Emerson, who resided near the shooting area, testified they heard the fatal shot and that from their homes they saw two persons, one of whom was the defendant, walking rapidly down the street away from the murder scene and enter and drive away in a black Ford automobile, and that the defendant was carrying a sawed off shot gun. The credibility of their testimony that they were able to identify the defendant, whom they had not previously known, in the short available interval in light of the intervening distance and obstructions, was sharply challenged at the trial.

■ Defendant did not testify himself but presented eight witnesses who testified that defendant was in Des Moines, one hundred and sixty-four miles distant, at the time of the shooting. If the alibi witnesses' testimony is accepted, defendant could not have committed the crime. We agree with the determination of the Supreme Court made on the appeal that the credibility of the identification witnesses presented a fact issue for the jury.

Defendant was kept at the penitentiary for safekeeping prior to his trial. Two fellow prisoners, Ruggles and Orton, testified at the trial that they heard defendant admit to another prisoner, Yates, that defendant had killed the officer. Yates denied that such statement was ever made to him and there is also evidence that defendant was at all times under close guard and would have been unable to communicate with Yates. Such testimony is referred to in the affirming opinion of the Iowa Supreme Court as testimony supporting the conviction.

At the trial, Ruggles and Orton claimed to have intercepted notes purportedly written by the defendant for smuggling outside the institution.

I.

■ Defendant, upon the basis of Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690, and Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, urges that the use of false evidence against him violates the due process clause of the Fourteenth Amendment. Such statement is too broad. The Court

in Miller v. Pate thus states the applicable rule:

"More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. Mooney v. Holohan, 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791]. There has been no deviation from that established principle. Napue v. [People of State of] Illinois, 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed.2d 1217;] Pyle v. [State of Kansas,] 317 U.S. 213, [63 S.Ct. 177, 87 L.Ed. 214]; cf. Alcorta v. [State of Texas,] 355 U.S. 28 [78 S.Ct. 103, 2 L.Ed.2d 9.] There can be no retreat from that principle here." 386 U.S. 1, 7, 87 S.Ct. 785, 788.

In the *Miller* case, the Court found that the prosecutor at the time of trial knew the incriminating shorts were stained with paint and the stains were passed off at the trial as blood stains.

Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, extends the rule to the situation where the prosecution, although not soliciting false evidence, "allows it to go uncorrected when it appears."

■ So far as we have been able to ascertain, all the Supreme Court cases setting aside convictions for want of due process by reason of the reception of false testimony are based upon the knowledge of the prosecutor that the testimony received is false or knowledge that material evidence has been suppressed. Such would appear to be a proper limitation of the rule. If convictions could be set aside years after they became final merely upon proof that some testimony of a witness proved to be false, there would be no finality to convictions and the orderly administration of justice would be unduly hampered.

There is no substantial evidence here to support a finding that the prosecutor knowingly used false testimony or that he permitted false testimony received to stand uncorrected. It is the claim of the defendant that certain notes which Orton and Ruggles intercepted were improperly received in evidence upon the basis that they were in defendant's handwriting. There is evidence that such notes were designed for smuggling out of the prison and contained language such as, "Have wife tell same story. Have nothing on me. Do what you said you would for me." and "They have nothing on any one. All they have to do is just keep still." Mr. Faxon, a recognized handwriting expert from Chicago, testified at the 1934 trial that such notes were in defendant's handwriting. Defendant in the present proceeding produced expert testimony that the writing on the notes was not his, and the State's present expert agrees with such testimony. There is nothing in the record to indicate that Mr. Faxon was not expressing his honest opinion or that the prosecution did not in good faith rely upon his opinion. The difference in the expert handwriting testimony may well be based upon advancements made in the science of handwriting analysis in the years that have intervened since the 1934 trial.

A further claim is made that Ruggles' testimony at the trial is false. Some support is found for this in affidavits provided by Ruggles to an attorney employed by the defendant. Subsequently by court order Ruggles' testimony was taken and the transcript thereof is in evidence. In such deposition, Ruggles repudiates the statements made in the affidavit and the burden of his testimony is that his testimony at the trial was correct.

We agree with the trial court's determination that defendant's conviction is not tainted by the knowing use of perjured testimony by the prosecution or by the suppression by the prosecution of material evidence.

II.

■ By reason of defendant's poverty, the court directed that certain witnesses, including Thomas Orcussi, be subpoenaed for the defendant at State expense. The sheriff at Burlington assumed responsibility for the service of such subpoenas by sending them to the sheriff of Polk

County for service upon the witnesses residing in Des Moines. With respect to Orcussi, the subpoena was returned unserved with the notice, "Thomas Orcussi is in Clarinda Institute for Insane." No further attempt was made to secure Orcussi, apparently in reliance upon such statement, and Orcussi did not appear as a witness at defendant's trial.

In the present proceeding, the Polk County jail records were introduced in evidence and they disclose that Orcussi was in the Polk County jail serving a thirty-day sentence for intoxication during the period the subpoena was in the hands of the Polk County sheriff for service. The jail records show nothing with respect to the transfer of Orcussi to a mental hospital. The trial court in its opinion observes that his independent investigation discloses that the records at the Clarinda Institution do not show that Orcussi was ever received at such institution. Such evidence establishes a prima facie case that the return of the Polk County sheriff is false. No explanation has been made by the State. Fairness requires an observation that persons who might be in a position to explain the return are no longer available. The record indicates that the prosecuting attorney had no knowledge of the falsity of the return, and defendant as a witness states that he has no evidence to the contrary. On this issue, the trial court states:

"[T]he applicable law governing this problem was enunciated by the Supreme Court of the United States when it held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' Brady v. [State of] Maryland, 373 U.S. 83, 87 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963)."

The State does not question the soundness of the law above quoted. An interesting question is raised as to whether "the prosecutor" is chargeable with the suppression of evidence for which the sheriff of another county of the state, apparently having no connection with the prosecutor, is responsible. We need not reach such problem here as we agree with the trial court's determination that no prejudice resulted from the failure to have Orcussi as a witness at the trial.

An affidavit of Orcussi dated February 11, 1949, is in evidence wherein he states that he was in the Polk County jail at the time of defendant's trial and that he was willing to testify as a witness on defendant's behalf and that, "I have knowledge of certain facts pertinent to the defense." Orcussi died in 1965. Orcussi never made any disclosure of what information, if any, he had. Defendant as a witness in the present proceeding stated that he visited with Orcussi while Orcussi was a fellow prisoner in the penitentiary subsequent to the trial; that Orcussi was arrested on the same murder charge as the one upon which defendant was convicted; that Orcussi was held for a time and "that he had been partially identified or had been identified to some extent but I am not certain by what witnesses." The only witnesses at the trial who identified defendant as being near the scene of the crime were Chumney and Emerson. The prosecuting attorney, Mr. Dailey, as a witness in the present proceeding testified that Emerson thought Orcussi looked like the man he saw with the defendant but that he was unable to positively identify him and that the other identifying witness, Chumney, positively stated that Orcussi was not the man. Orcussi was held for a time for investigation but the proceeding against him was dismissed before defendant's trial for want of evidence sufficient to convict.

Thus it would appear that the only possible use of Orcussi as a witness, as far as the record reveals, would be to attempt to impeach the witness who identified the defendant. Orcussi was never identified by Chumney and was not positively identified by Emerson and

hence it is difficult to see where his testimony would have been of any value to the defendant. Defendant's counsel could have obtained this same evidence at the trial by cross-examination of Emerson and Chumney. No significant reference to Orcussi was made during the trial.

We agree with the trial court's conclusion that "the court cannot now find that Orcussi's testimony was evidence material to the guilt or punishment of Johnson. Petitioner is entitled to no relief on his claim that he was deprived of an important trial witness."

### III.

▉ Defendant next makes a twofold attack on the alibi instruction given by the court The first objection is to the language in the instruction directing the jury to look upon the alibi defense with caution. Such attack was considered and rejected upon direct appeal. The attack does not reach constitutional proportions and is not entitled to consideration here.

The second and more serious attack is that the instruction given deprives the defendant of the presumption of innocence in that it improperly places the burden of proof of alibi upon the defendant. The instruction given does place the burden of proof on the defendant to establish his alibi defense by a preponderance of the evidence and then goes on to say, "The evidence upon this point is to be considered by the jury, and if upon the whole case including the evidence of an alibi, there is a reasonable doubt of defendant's guilt, you should acquit him."

As pointed out by the defendant, this court disapproves a similar instruction in Glover v. United States, 8 Cir., 147 F. 426, upon the basis that the instruction improperly shifts the burden of proof to the defendant. We stated:

"It loses sight of the fundamental rule in criminal procedure that the defendant is presumed to be innocent of the offense with which he is charged; that this is a continuing presumption which attends him like a guarding spirit throughout the ordeal of his trial, and imposes upon the prosecution the burden of overcoming such presumption by such weight of evidence as will satisfy the minds of the triers beyond a reasonable doubt of the defendant's guilt. This reasonable doubt in his favor applies to the evidence in its entirety and necessarily to any part of it." 147 F. 426, 431.

We also determined that an addition, similar to the last sentence of the instruction here given, did not cure the prior portion of the instruction placing the burden upon the defendant to prove alibi and that the incongruous instructions "were well calculated to confuse the understanding of the jury as to how they should apply the rule of reasonable doubt."

The Supreme Court has not passed upon the validity of this type of instruction but the great weight of authority supports the view that such an instruction is erroneous. See Thomas v. United States, 9 Cir., 213 F.2d 30; Comment, 49 Iowa L.Rev. 590.

We note that the Iowa court has consistently upheld an alibi instruction similar to that given here although the court is sharply divided upon this issue. State v. LaMar, Iowa, 151 N.W.2d 496; State v. Stump, 254 Iowa 1181, 119 N.W.2d 210. The federal district court, while finding the alibi instruction confusing and not a model of clarity, on the basis of the instructions as a whole determined that the instruction did not result in a fundamental unfairness of sufficient magnitude to be violative of the due process clause, citing Leland v. State of Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302. It is quite true that in other instructions the court stressed the presumption of innocence, reasonable doubt and the necessity of the State proving all essential elements of the case beyond a reasonable doubt. It is difficult to say on the basis of the instructions as a whole that the defendant was deprived of any substantial constitutional right.

When this case was tried in 1934, the instruction challenged had the full backing of the Iowa Supreme Court. This case was finally adjudicated long before

the Supreme Court determined federal constitutional rights guaranteed by the first ten amendments are to be applied to state proceedings by reason of the Fourteenth Amendment. The trial court based its decision in part on cases denying retroactive application to newly determined constitutional principles. We are not squarely confronted with retroactivity here as there has been no authoritative decision by the Supreme Court determining the challenged instruction violates federally guaranteed constitutional rights. However, the reasoning of the Supreme Court cases dealing with retroactivity lends support to the determination that the conviction should not be set aside by reason of the alibi instruction. The cases hold that retroactive application of newly announced constitutional determinations to state prosecutions shall be determined on a case-to-case basis. In a number of situations, retroactive application has been denied. Thus in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, the rule of Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, holding that illegally seized evidence could not be used in a state criminal proceeding, was denied retroactive application.

In Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the Court held that the rules of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, with respect to police interrogation without proper warning, should not be applied retroactively. In Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, the Court held that the pronouncement of Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, proscribing adverse comment on defendant's failure to testify by prosecutors and judges in state criminal trials, is not to be given retroactive effect. There are other cases, such as Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (right to

counsel), and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (coerced confession), where newly adopted constitutional rules have been given retroactive effect. The tests with respect to retroactivity are fully discussed in the foregoing cases.

No challenge was made to the alibi instruction on constitutional grounds in the defendant's trial resulting in his conviction or in his appeal therefrom. We have little doubt that such challenge, if then made, would have been rejected. We do not believe that the challenge now made, even in the event it is entitled to be upheld under present day standards, would be given retroactive application to the 1934 conviction.

## IV.

Lastly, defendant urges that he has not been afforded a fair trial. In addition to the specific complaints heretofore discussed, defendant claims he was prejudiced by the prosecutor's vigorous argument pointing out that he did not take the witness stand to deny the charge; by unfavorable publicity at the time of the trial; and other improper conduct on the part of the prosecution. We are here considering a collateral attack upon a conviction, not a direct appeal. Only errors reaching constitutional dimensions can be considered and such errors must be fairly raised and established by the defendant.

The errors in this division were not raised by the defendant's petition and were not presented to or considered by the trial court. Issues not properly raised in the trial court cannot be considered upon appeal. The most substantial issue, which relates to comment on defendant's failure to testify, is foreclosed by Tehan v. Shott, supra.

Defendant was tried before Judge Hale, a fair and able judge who later served with distinction on the Supreme Court of Iowa. Defendant was represented by capable lawyers of his own choosing both at the trial and upon the appeal. All issues raised at his trial and upon appeal received fair considera-

tion upon the basis of the applicable legal standards then existing. Defendant has failed to establish the violation of federal constitutional rights of such magnitude as to entitle him to a new trial.

The judgment is affirmed.