James K. BASSETT, Petitioner-Appellant,

v.

S. Lamont SMITH, Warden, Georgia State Prison, Respondent-Appellee.

No. 71–2513.

United States Court of Appeals, Fifth Circuit.

July 17, 1972.

**348**

Foy Devine, Atlanta, Ga. (Court appointed), for petitioner-appellant.

Arthur K. Bolton, Atty. Gen. of Ga., Harold N. Hill, Jr., Courtney Wilder Stanton, David L. G. King, Jr., Asst. Attys., Gen., Atlanta, Ga., for respondent-appellee.

Before RIVES, BELL and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In Smith v. Smith, 5 Cir. 1971, 454 F.2d 572, this court held that the alibi charge used in the state courts of Georgia violated due process standards. This appeal presents the narrow question of the extent to which that ruling will be given retroactive application.

I.

James K. Bassett was indicted along with Charles Patterson on August 19, 1957, in the Bib County, Georgia, Superior Court for murder. Both defendants entered pleas of not guilty. Their cases were tried separately. On September 18, 1957, the jury found Bassett guilty of murder and recommended mercy. Bassett was sentenced to life imprisonment, but was released on parole December 20, 1971.[1]

After exhausting his remedies in the state courts of Georgia, Bassett filed this habeas petition in federal court asserting that the use of Georgia's alibi charge against him violated due process. The only factual issue in the court below was the content of the instructions given at his trial. That portion of the transcript of the trial which contained the charge of the court could not be located. The judge who tried the case prepared an affidavit in which he set out a "Charge of the Court" which, to the best of his recollection and based upon his practice at the time the case was tried, was given to the jury in Bassett's trial. That portion of the charge which Bassett attacks is as follows:

> The burden is on the accused to establish his alibi, not beyond a reasonable doubt, but to the reasonable satisfaction of the jury. If the showing as to alibi introduced in this case has established to your reasonable satisfaction that the defendant was elsewhere when the alleged crime was committed, if one was committed, it would be your duty to acquit the defendant.

The charge given at Bassett's trial was virtually indistinguishable from the charge condemned in Smith.

The court below declined to grant habeas relief. In an order filed prior to our decision in Smith, the court ruled that any error in the charge was harmless error not rising to constitutional dimensions.

II.

Smith was decided on December 14, 1971. The decision was based upon a series of Eighth Circuit cases dealing with the Iowa alibi charge which was

---

1. His release on parole does not render this action moot. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

similar to the Georgia charge. In the first case, Johnson v. Bennett, 8 Cir. 1967, 386 F.2d 677, a panel of the Eighth Circuit sustained the Iowa alibi charge against a due process attack. The Supreme Court immediately granted certiorari in the case, Johnson v. Bennett, 390 U.S. 1002, 88 S.Ct. 1247, 20 L. Ed.2d 102 (1968). Before disposition of *Johnson*, however, the Eighth Circuit went en banc to consider Stump v. Bennett, 8 Cir. 1968, 398 F.2d 111, a case involving the same Iowa charge. In *Stump* the Eighth Circuit, with three members of the *Johnson* panel dissenting, concluded that the Iowa charge contravened the due process guarantee by shifting the burden of proof on an essential element of the crime. On December 16, 1968, shortly after *Stump*, the Supreme Court vacated *Johnson* for reconsideration in light of *Stump*. Johnson v. Bennett, 393 U.S. 253, 89 S. Ct. 436, 21 L.Ed.2d 415 (1968). On the same day, the court denied certiorari in *Stump*. Bennett v. Stump, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968).

The State of Georgia initially contends that our decision in *Smith* should be applied prospectively only from the date on which it was decided, December 14, 1971. This course is, however, foreclosed by the original *Smith* decision which was explicitly made applicable to all trials conducted after the date of the Supreme Court's denial of certiorari in *Stump*. 454 F.2d 579, n. 4. Accordingly, the narrow question which we consider here is whether the decision should be applied retroactively to trials conducted prior to December 16, 1968.

### III.

From its origin in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 2d 601 (1965), the doctrine that newly announced constitutional principles of criminal law could, under certain circumstances, be given limited prospective application has developed into a complex body of decisional law. The most frequently cited formulation of the criteria

guiding resolution of retroactivity problems is that contained in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967). There, the Court articulated three factors which must be considered in making retroactivity determinations:

(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

Id., at 388 U.S. 297, 87 S.Ct. 1970. See also, Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

The Court has held that retroactive effect must be given a new rule where the "major purpose of  *  *  *  [the] doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials  *  *  * ". Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971). However, the Court has recognized that "the extent to which a condemned practice infects the integrity of the truth-determining process at trial is a 'question of probabilities'". Stovall v. Denno, 388 U.S. 293, 298, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199. Where the Court has

been unable to conclude that the use of such a "condemned practice" in past criminal trials presents *substantial likelihood* that the results of a number of those trials were factually incorrect, [it has] not accorded retroactive effect to the decision condemning that practice.

Williams v. United States, 401 U.S. 646, 655 n. 7, 91 S.Ct. 1148, 1154, 28 L.Ed.2d 388 (1971) (emphasis added). Thus, for example, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149

(1967), which required counsel at pre-trial line-ups, was not applied retroactively even though the rule was "aimed at avoiding unfairness at the trial by enhancing the reliability of the fact-finding process in the area of identification evidence", because the possibility of error in the truth-determining process was outweighed by the adverse impact of retroactivity on the administration of justice. Stovall v. Denno, supra, at 388 U.S. 298, 87 S.Ct. 1967. Similarly, the Court denied retroactive application to Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which held that states cannot refuse a request for jury trial in serious criminal cases, reasoning:

> [I]n the context of the institutions and practices by which we adopt and apply our criminal laws, the right to jury trial generally tends to prevent arbitrariness and repression. * * * We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may· never be as fairly treated by a judge as he would be by a jury.

DeStefano v. Woods, 392 U.S. 631, 633–634, 88 S.Ct. 2093, 2095, 20 L.Ed.2d 1308 (1968); see also, Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

■ These decisions teach that the mere possibility that the rule may have some effect on the reliability of the fact-finding process does not automatically require its retroactive application. Even where the rule is aimed in some degree at improving the truth-determining function of the trial, the court must exercise its best judgment in weighing this factor against the adverse impact on the administration of justice and the good faith reliance of state law enforcement officials.

### IV.

■ Upon consideration of the three factors enumerated in Stovall v. Denno, we conclude that retroactive application of *Smith* to trials conducted prior to December 16, 1968, is not required.

### A. *The Purpose of the Smith Rule*

As this court recognized in the original *Smith* opinion the Georgia charge on alibi was likely to appear contradictory to lay jurors. On the one hand, the charge instructed that alibi was an affirmative defense which the accused must prove to the reasonable satisfaction of the jury. However, the jury was further instructed to consider *all* the evidence, including that of alibi, in determining the guilt of defendants beyond a reasonable doubt. The charge in no way suggested that the jury was required to accept the state's proof of presence if it was not reasonably satisfied as to the truth of the defendant's alibi evidence. Indeed, the charge as a whole strongly emphasized the requirement of proof beyond a reasonable doubt of every. element of the crime, including presence.

In view of these apparent contradictions, the *Smith* court held that the charge violated due process because it was likely to cause "confusion" and created a grave danger that the "jury [might] incorrectly plac[e] the burden of proof on the petitioner" as to the factual issue of his presence at the scene of the crime. *Smith*, at 454 F.2d 578. Thus, the purpose of the *Smith* decision may be stated as being the elimination of the possibility that a highly ambiguous and contradictory charge might lead the jury to an erroneous belief that it was free to apply a lesser standard of proof to an essential element of the crime. More generally, then, the rule was aimed at preserving "the presumption of innocence" and maintaining "the harsh burden of proof placed on the State in criminal prosecution". *Smith*, at 454 F.2d 579.

This purpose of the rule is undoubtedly linked to the reliability of the fact-

finding process. Rules concerning allocation of burden of proof invariably reflect policy judgments concerning the degree of accuracy that is demanded of the fact finder. As the Supreme Court had occasion to observe in Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958):

> In all kinds of litigation it is plain that where the burden of proof lies may be decisive of the outcome. * * * There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. * * * [T]his margin of error is reduced as to the [criminal defendant] by the process of placing on the [government] the burden of * * * persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.

The requirement of proof beyond a reasonable doubt is, then, aimed primarily at insuring that no person lose his liberty because of an erroneous verdict based upon factual error. See also In Re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1971).

Nevertheless, the extent to which an unconstitutional practice infects the fact-finding process is "necessarily a matter of degree". Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The Georgia charge did not unequivocally shift the burden of proof. It merely created a possibility that the jury might misapprehend the proper burden. In order to reach the conclusion that the Georgia charge "presents a substantial likelihood that the results of a number of those trials were factually incorrect", Williams v. United States, supra, at 401 U.S. 655, n. 7, 91 S.Ct. 1154, we would necessarily have to believe that: (1) Numerous juries were confused by the charge and, in fact, applied a lesser standard of proof as to the issue of presence, and (2) of those juries that did in fact apply an in-

correct standard, a substantial number reached an erroneous verdict resting on factual error. We think the possibility is remote that a substantial number of juries erred on both of these counts and reached a factually incorrect verdict. Accordingly, retroactivity is not automatically required if the other two factors weigh strongly against it.

B. *Justified Reliance on the Old Standard*

■■ We conclude that the State of Georgia had a reasonable basis for belief that its charge did not offend due process prior to December 16, 1968. The State's reliance was concededly not founded upon any Supreme Court decision sustaining the Georgia or similar charges against a due process attack. Nevertheless, the very absence of any action on the part of the federal courts condemning this nearly century-old practice of the Georgia courts prior to December 16, 1968, inevitably gave rise to the implication that the practice did not offend the Constitution.[2]

Prior to the Supreme Court's denial of certiorari in *Stump*, there were no cases which clearly foreshadowed the unconstitutionality of the Georgia charge. The due process clause has always been interpreted as permitting the states wide latitude in fashioning rules of evidence and procedure. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). Federal review of a jury charge is appropriate only where it operates in an oppressive and arbitrary manner so as to render the trial fundamentally unfair. Higgins v. Wainwright, 5 Cir. 1970, 424 F.2d 177. Thus, in Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the Supreme Court upheld the shifting of the burden of persuasion of a plea of insanity in the Oregon state courts, even though federal courts did not permit

2. The Georgia alibi doctrine was first enunciated in Harrison v. State, 83 Ga. 129, 9 S.E. 542 (1889).

such a shift in the burden of persuasion. *Leland,* of course, lent strong support, by analogy, to the validity of the Georgia charge. Oregon treated insanity as an affirmative defense and cast upon the defendant the burden of proving it. Georgia similarly characterized the defense of alibi. At the same time, however, the Oregon charge allowed the jury to consider all evidence of the accused's mental state in determining whether the state had proved beyond a reasonable doubt every element of the crime, including premeditation, deliberation, malice, and intent. Similarly, the Georgia charge permitted the jury to consider the accused's evidence of alibi along with all the other evidence in the case as creating a reasonable doubt that the defendant had committed all elements of the crime charged. Thus, the Georgia courts could reasonably have relied on *Leland* in concluding that this type of shift in the burden of proof did not offend due process.

Another factor supporting the reasonableness of Georgia's reliance on its charge is that the defense of alibi has historically been singled out by numerous jurisdictions for varying forms of special treatment. At the time the Supreme Court denied certiorari in *Stump* only two states, Georgia and Iowa, still placed upon the criminal defendant any burden of proving alibi. However, at least six states placed upon the defendant the burden of going forward with the evidence of alibi.[3] Still other states permitted instructions to the jury that alibi evidence was to be received cautiously because it is a defense that is easily fabricated.[4]

The Georgia charge was never an object of scholarly or judicial praise. Nevertheless, we cannot say that it should have been obvious to the Georgia courts that the charge rose to the level of constitutional error. After the denial

of certiorari in *Stump* the situation changed. The sequence of those Eighth Circuit cases made it evident that the Supreme Court's action had greater import than the usual denial of certiorari. Thereafter, the dogged refusal[5] of the Georgia courts to recognize the constitutional flaw in the charge became far less reasonable. On balance however, we conclude that prior to that date the State's reliance was not unreasonable.

C. *Effect on the Administration of Justice*

Finally, it can scarcely be disputed that full retroactive application of *Smith* would have a drastic impact on the administration of justice in the State of Georgia. The defense of alibi has traditionally been a much favored one. The State of Georgia asserts that the charge was routinely given in thousands of trials prior to December 16, 1968, in which the factual issue of presence at the scene of the crime may or may not have been a substantial one. There is, of course, no way of knowing the precise number of convictions that would be affected, but it is reasonable to assume that the number would be large.

Bassett argues that in view of the fact that this court has already applied its decision to all trials occurring after December 16, 1968, the incremental impact of full retroactive application would be slight because our prior decision has already extended the new rule to the great majority of potential habeas petitioners. This argument is, however, fallacious. Even if one concedes that only a small minority of those held in custody by the State of Georgia were tried prior to the date in question, it is nevertheless true that these individuals are likely to have been convicted of the most serious crimes. Moreover, because of the passage of time, it is precisely these individuals who will be the most difficult to retry. In view of these factors, it can

---

3. The states are listed in Stump v. Bennett, 398 F.2d 111, 114, n. 3 (1968).

4. See e. g. Bolin v. State, 219 Tenn. 4, 405 S.W.2d 768, 773 (1966) ; Common-

wealth v. Sullivan, 354 Mass. 598, 239 N.E.2d 5, 10 (1969).

5. See Thornton v. State, 226 Ga. 837, 178 S.E.2d 193 (1970).

353

hardly be said that further extension of the rule announced in *Smith* will have only a *de minimum* impact on administration of criminal law in the State of Georgia.

## V.

In summary, the remote possibility that the Georgia alibi charge may have affected the integrity of the fact-finding process in the trials in which it was given is outweighed by considerations of reliance upon prior law and of the potential impact upon the administration of justice in the State of Georgia. Accordingly, the rule will be applied only to trials conducted after December 16, 1968. The judgment of the district court dismissing the petition for habeas corpus is

Affirmed.

RIVES, Circuit Judge (dissenting):

I agree that the narrow question presented is the extent to which the ruling in Smith v. Smith, 5 Cir. 1971, 454 F.2d 572, will be given retroactive application. The Chief Judge of this Circuit has recently referred to the "retroactive theory" as "another enigma wrapped in a mystery," and has reviewed most of the pertinent cases to sustain his conclusion that, "Perhaps no other area of constitutional law is more enshrined in puzzlement and apparent logical inconsistencies." Vaccaro v. United States, 5 Cir. 1972, 461 F.2d 626. However, at least two principles stand out in bold relief as uniformly approved. The first is that retroactivity is the general rule and prospectivity is not even "arguably the proper course" except in "new" constitutional interpretations that change the law. See Williams v. United States, 1971, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388.[1] The second is that " * * * any procedure which seriously threatens to convict a substantial number of innocent persons must be abandoned and retroactively uprooted." *Vaccaro, supra,* 461 F.2d at p. 632. It seems clear to me

that those two principles require complete retroactive application of the ruling in Smith v. Smith, *supra.*

In the concluding paragraph of its opinion, the majority summarizes its "balancing" test as " * * * the remote possibility that the Georgia alibi charge may have affected the integrity of the fact-finding process in the trials in which it was given is outweighed by considerations of reliance upon prior law and of the potential impact upon the administration of justice in the State of Georgia." With deference, I disagree with weight accorded to both sides of the scales.

To recognize only a "remote possibility" that the Georgia alibi charge may have affected the integrity of the fact-finding process is, I submit, to ignore the basic rationale of the *Smith* decision which uses such expressions as

" * * * caused confusion in the instant case and created a substantial likelihood of the jury's incorrectly placing the burden of proof on the petitioner much to his prejudice. * * * * Accordingly, we must presume that prejudice resulted.

" * * * * [T]here is yet no doubt that a shift in the burden of proof of an essential element of the crime does rise to constitutional proportions and renders the trial fundamentally unfair. The presumption of innocence and the harsh burden of proof placed on the State in criminal prosecutions are two of the oldest and most fundamental rights protected by our Constitution. * * * * They purport to protect all citizens from the threat of punishment by mistake. They are therefore far too important and fundamental to be classified as less than constitutionally protected."

While, concededly, the majority does not so intend, the clear import of its opinion is, I submit, to cast serious doubt upon the reasoning and soundness of the *Smith* opinion. Under our system, it takes an en banc court to over-

---

1. That principle is implicitly recognized throughout the majority opinion.

rule *Smith.* I would adhere wholeheartedly to both the decision and the opinion in *Smith.*

Let us go now to the weight accorded the other side of the scales—"considerations of reliance upon prior law and of the potential impact upon the administration of justice in the State of Georgia." That Georgia's reliance upon prior law was always shrouded in serious constitutional doubt can be demonstrated by comparing footnote 2 of the majority opinion with footnote 3 of the *Smith* opinion:

"2. The Georgia alibi doctrine was first enunciated in Harrison v. State, 83 Ga. 129, 9 S.E. 542 (1889)."

"3. In Harrison v. State, 83 Ga. 129, 9 S.E. 542 (1889), the Chief Judge of the Georgia Supreme Court recognized this problem.

It seems to us that, in the metaphysics of trial, there is great difficulty in distinguishing between reasonable doubt on the specific defense of alibi and reasonable doubt of guilt upon the whole case taken together. Where presence is necessary to constitute guilt, it seems that a reasonable doubt of presence would, by unresistible logic, involve reasonable doubt of guilt.

9 S.E. at 544."

The Georgia alibi charge has been criticized by various judges throughout its existence. See Smith v. Smith, *supra,* 454 F.2d at 575–577.

The Iowa alibi instruction has a similar history. In Johnson v. Bennett, 8 Cir. 1969, 414 F.2d 50, 53–55, then Circuit Judge Blackmun reviewed the Iowa decisions and concluded:

"It is thus apparent that the Iowa court has continuously struggled with the alibi instruction so frequently employed by the trial courts of the state. The division among the members of the Supreme Court was clear and bitter in the earlier cases of 80 years ago. The division has been clear and bitter in the cases decided during the last 6 years."

Thus, neither Iowa nor Georgia was justified in relying upon the decisions of its own state courts. There is, of course, on this matter of the interpretation and application of the United States Constitution a complete absence of authority from the federal courts, other than Johnson v. Bennett, 8 Cir. 1967, 386 F.2d 677, to sustain the alibi instruction of either of the two states. This state of the law leads to the application of the general rule of retroactivity and to a recognition that prospectivity is not even "arguably the proper course" because there has been no "new" constitutional interpretation that changes the law. That was the position taken by the Eighth Circuit sitting en banc in Stump v. Bennett, 1968, 398 F. 2d 111, 122, 123:

"That an oppressive shifting of the burden of proof to a criminal defendant violates due process is not a new doctrine within constitutional law. Under these circumstances we are not directly faced with issues of retroactivity. We recognize that a panel of this court, in Johnson v. Bennett, 386 F.2d 677, 682–683 (8 Cir. 1967), cert. granted 390 U.S. 1002, 88 S.Ct. 1247, 20 L.Ed.2d 102 (1968), also a habeas corpus proceeding by an Iowa state prisoner, refused relief as to a number of matters, including the alibi instruction. The *Johnson* case concededly has some factual distinctions from the present one. Also significant is the fact that in the *Stump* case, unlike *Johnson,* counsel has carefully preserved by objections throughout the trial and appellate procedures his argument as to the unconstitutionality of the instruction."

In Johnson v. Bennett, 1968, 393 U.S. 253, 255, n. 5, 89 S.Ct. 436, 437, 21 L. Ed.2d 415, the Supreme Court quoted extensively from this holding of the Eighth Circuit, concluding with a re-

mand for a definite ruling on the issue as follows:

"We express no opinion as to the validity of the distinctions suggested by the Court of Appeals. Instead, we deem it appropriate to remand to that court for a definite ruling on the issue."

Then Circuit Judge Blackmun responded for the majority of an Eighth Circuit en banc court, as follows:

"4. As pointed out in *Stump*, 398 F.2d at 122, our holding there that an oppressive shifting of the burden of proof to the defendant violates due process is not a new constitutional doctrine. Thus we were not 'directly faced with issues of retroactivity.' The dissent in *Stump* seems to suggest that the question of retroactivity is in the case. 398 F.2d at 126. This was definitely so stated in the panel's decision in Johnson's case. 386 F.2d at 682–683. We adhere, however, to the majority view in *Stump* that we are not faced in Johnson's case with an issue of retroactivity. Even if we were, it would perhaps suffice only to note that Johnson's case, with its alibi instruction issue, reached us before Stump's." [2]

Johnson v. Bennett, *supra*, 414 F.2d at 57; compare State v. Wisniewski, Iowa 1969, 171 N.W.2d 882, 887.

It seems to me that, unless we desire to create a conflict between the circuits, we should follow the holding of the Eighth Circuit in *Stump*, 398 F.2d at 122, repeated and adhered to in *Johnson*, 414 F.2d at 57.

In my view the majority opinion conflicts both with the holdings of the Eighth Circuit and with the rationale and reasoning of our own Fifth Circuit in Smith v. Smith, *supra*.

Finally as to the potential impact upon the administration of justice in the State of Georgia, the majority views with apprehension the large number of convictions that would be affected. I think that the majority overestimates the potential number of such cases, this being the only one thus far since the decision in Smith v. Smith, *supra*. Conceding arguendo, however, the correctness of the majority's estimate, there should be no shrinking from such a burden when it is considered that the Georgia alibi instruction is infected with a clear danger of convicting the innocent. See Tehan v. United States ex rel. Shott, 1966, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453. I therefore respectfully dissent.

---

2. The Eighth Circuit invalidated the Iowa alibi instruction as applied to the 1934 state trial of Johnson. Bassett's state trial presently under consideration took place 23 years later, in 1957.